## Moore v. Sinks.

Case for the obstruction of an artificial water course. In 1842, *A.* verbally sold to the plaintiff a piece of ground, and the latter put a tan-yard and bark-mill thereon. The land extended to within twenty feet of a mill-race which belonged to *A.*, which was on his ground and conveyed water to his flouring-mill. The plaintiff was permitted, by parol and without consideration, to cut a channel across the ground which divided his from the race and take therefrom, for propelling the bark-mill, any surplus water not required for driving the flouring-mill. This was all the right the plaintiff ever claimed during the lifetime of *A.* In 1845,

Nov. Term,
·1850.

Moore
v.
Sinks.

*A.* acknowledged a deed conveying the land described in the declaration with the "appurtenances," not mentioning a mill or flowage of water. After the death of *A.*, the defendant purchased the land on which stood the mill and race. The plaintiff took water from said race at a time when there was no surplus water flowing. The defendant filled up the channel of the plaintiff so far as it was on the defendant's land. This is the ground of complaint. *Held,* that the deed, by its terms, did not convey a right to take water from the defendant's race; that the plaintiff was compelled to show by evidence *dehors* the deed, that he was entitled to take water to any extent.

*Held,* also, that the evidence did not show that his right was obstructed.

Monday,
November 25.

ERROR to the *Wayne* Circuit Court.

Perkins, J.—*Richard Moore* brought an action on the case against *Daniel Sinks*, complaining of the obstruction of an artificial water course. He alleged, in his declaration, that, on the 20th day of *September*, 1845, he possessed, and that he had ever since possessed, a certain piece of ground, being about half an acre, of which he set out the particular boundaries, and on which he averred there was, on said 20th day of *September*, "and had been ever since, and still was, a tannery, and a bark-mill used for grinding bark for said tannery, to which a certain quantity of water, sufficient to work said bark-mill on the premises aforesaid, was accustomed to flow from a certain mill-race, running near said bark-mill to a flouring-mill formerly belonging to one *Jacob Sinks*, and which water was an appurtenance to said bark-mill and the premises on which it was situated," &c., and that the defendant, on the 10th day of *September*, 1846, filled up the channel in which the water was accustomed to flow to the bark-mill, &c.·

Plea—not guilty. Trial by jury. Verdict for the defendant. Motion for a new trial overruled, and judgment on the verdict.

The evidence is upon the record and establishes the following facts:

In the latter part of the year 1842, *Jacob Sinks*, for the consideration of 50 dollars, verbally sold to the plaintiff the ground in the declaration mentioned. The plaintiff immediately took possession and put upon said ground a tan-yard, and, soon afterwards, a bark-mill. Said piece

of ground, so sold to the plaintiff, extended on the west to within about twenty feet of the mill-race mentioned, which belonged to said *Jacob Sinks*, which was upon his own ground, and which conducted water to an ancient flouring-mill of his, situate upon the same tract of ground, owned by him, through which the race run. Across this narrow strip of ground belonging to said *Jacob Sinks*, lying between the land sold to plaintiff and said *Jacob's* race, the plaintiff was permitted, after building his bark-mill, to cut a channel, and by means of it, to take from said race any surplus water not required for driving the flouring-mill, and use it in propelling his bark-mill. This permission was given by parol, and without consideration. The use of such surplus water was all the right the plaintiff ever claimed or exercised in the lifetime of *Jacob Sinks*. On the 21st day of *June*, 1845, *Jacob Sinks* acknowledged a deed, conveying to the plaintiff, by metes and bounds, the land described in his declaration, "with the appurtenances," but not mentioning particularly a mill, or flowage of water. This deed was not delivered till after *Jacob Sinks's* death, which, and that of his wife also, occurred in *October*, 1846. On the 23d of *November*, 1846, *Daniel Sinks*, the defendant to this suit, and one of the heirs of *Jacob Sinks*, joined with others in a deed to *Richard Moore*, the plaintiff in this suit, and others, which deed recited that " Whereas, *Jacob Sinks*, and *Mary*, his wife, late," &c., "now deceased, were jointly seized," &c.; " and whereas the said *Jacob Sinks*, in his lifetime, bargained, sold," &c., "whereby the titles to such real estate are insecure," &c., "therefore to rectify and give effect to said conveyances," &c., "we," &c., "do hereby release, convey, and confirm, unto," &c., "with the appurtenances," &c. This deed included the land mentioned in the declaration in the present suit. The land, on which the mill-race and the ancient flouring mill were, was purchased by the defendant after the decease of *Jacob Sinks*. After his purchase, and during his ownership of the property, the plaintiff opened the said mill-race of the defendant, and took therefrom water, for

his bark-mill, at a time when there was no surplus water flowing in the race. The defendant thereupon filled up the channel of the plaintiff, by which he drew off said water, so far as it was upon the land of the defendant, and suffered it to remain so filled for twenty-four hours; which act constitutes the ground of complaint in this suit.

In order to determine whether the plaintiff sustained an injury from the act of the defendant, it is necessary that we first ascertain the nature and extent of the plaintiff's right to take water from the defendant's mill-race. In doing this we shall lay out of view the deed of confirmation by *Daniel Sinks* and others to the plaintiff, as that deed was not intended to confer any rights beyond those supposed to have been conveyed by the deed of *Jacob Sinks*, to the consideration of which deed we proceed.

That deed, as we have said, made no mention of a mill or a right to take water from the defendant's race, and by its terms, therefore, did not purport to convey any such right. Hence the plaintiff was driven to the necessity of resorting to evidence *dehors* the deed to show himself entitled to so take water to any extent. He had a right to resort to such evidence, and would be entitled to exercise whatever right it established in him.

The right claimed by the plaintiff in this case is an easement upon the land and water of the defendant, an incorporeal hereditament lying, according to the common law, only in grant, and which can be evidenced only by a deed or by prescription—evidence of a deed. See the cases collected in the third chapter of the American edition of *Gale* and *Whately* on Easements, and the luminous opinion of Baron *Alderson* in *Wood* v. *Leadbelter*, 13 Mand. W. 837. An easement may be shown by such evidence to have become an appurtenance to land other than that upon which it is enjoyed; but there was not such evidence in this case.

It may be regarded as doubtful, therefore, whether the plaintiff established a right to the use of any water from the defendant's race. There are, we admit, cases which modify the general principle above laid down as to the

mode of acquiring easement rights, by the application of another well known common law doctrine, viz., that of estoppel. For example; if a man construct a race upon his own land, build a mill upon it, and then sell the mill and the ground about it, he will be estopped to deny that the right to flow water in that race over the part of the ground not embraced in the conveyance of the mill, passed by the grant, because, by his own act, he had connected it with the mill, had shown it to the purchaser as part thereof, and had received a consideration for it in the sale. It would be a fraud to afterwards cut off the right to the water. But this is not such a case. The grantor of the land did not construct the race nor build the mill. Those things were done by the purchaser after his purchase. It is true they were completed before he received his deed. But that deed was for the consideration of the land only, and was executed to convey what had been agreed to be conveyed in the sale. See the authorities above referred to, and notes to them.

But it would be out of place for us here to enter upon a review of the class of cases of which we are now speaking, with the purpose of distinguishing this case from them; for, conceding, for the sake of the argument, that the plaintiff did show that the right to take water from the defendant's race was an appurtenance to his bark-mill and the ground on which it stood, still, as the deed of conveyance did not define the extent of that right, we are compelled to look to the parol evidence in the case to ascertain it, and by that evidence it appears that that right, in no event, extended beyond the taking of water not wanted for the running of the flouring-mill, and the evidence does not show that the right was ever obstructed. In no view of the case, therefore, would the plaintiff recover.

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Newman* and *J. Perry*, for the plaintiff.

*J. Rariden*, for the defendant.