## Case No. 11,481.

### PUTNAM et al. v. NEW ALBANY et al.

[4 Biss. 365.] [1]

Circuit Court, D. Indiana. July, 1869.

JURISDICTION — WHEN EXCLUSIVE— JUDGMENT OF STATE COURT—CODE — CUMULATIVE REMEDIES— STALE DEMANDS—EXHIBITS—CROSS-BILL—RATIFICATION OF SUBSCRIPTION BY CITY — PRACTICE —SUBSCRIPTION — WHEN CANNOT BE RESCINDED —WHEN MAY BE MODIFIED — ESTOPPEL —PAROL EVIDENCE—VOLUNTEER.

1. It is a general rule that when different courts have concurrent jurisdiction of a matter, the first that takes the jurisdiction excludes the others. But to this rule there are exceptions.

2. When a party has obtained a judgment in a state court against a corporation, on account of whose insolvency he is unable to collect the same, he may file his bill in equity in a national court to oblige the debtors of the corporation to pay the judgment, if the citizenship of the parties to the bill will confer the jurisdiction ac-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

cording to the provisions of the judiciary act [1 Stat. 73].

[Cited in Gorrell v. Dickson, 26 Fed. 455.]

3. The Indiana Code of Procedure, which gives certain equitable remedies in courts of law, is, as to these, cumulative only; and it does not take from courts of equity those remedies which existed before the Code was adopted.

4. Courts of equity are reluctant to sustain a demurrer to a bill on the ground of staleness alone, unless it is such that the delay would bar an action at law on the same claim, or unless there is a strong analogy between the case in equity, and a case at law on which a statute of limitation would operate.

[Cited in Lemoine v. Dunklin Co., 38 Fed. 570.]

5. There is no rule in equity pleading requiring that either writings mentioned in a bill, or copies of them, shall be filed, as exhibits, with the bill.

6. In a suit in equity in this court, in which all the defendants are citizens of Indiana, one defendant cannot file a cross-bill against his co-defendants proposing to litigate subjects foreign to the matters set up in the original bill, and in which the original complainants have no interest.

7. An illegal subscription of railroad stock by a city may be ratified under a subsequent act of the legislature authorizing its ratification. A bill alleging such subscription ought to aver the ratification. But the answer, by putting in issue the question of such ratification, may supply the want of such averment in the bill.

8. The Indiana Code authorizes a plaintiff, in a proceeding to foreclose a mortgage, to take a personal judgment for the debt secured by it, if such debt be evidenced by a note or other writing than the mortgage.

9. A subscription of capital stock in a corporation cannot be rescinded so as to affect the rights of its creditors while the corporation is insolvent.

10. But when the subscription is conditional, and while the corporation is solvent, it may be reduced and modified according to the terms of the condition; and such modification, acquiesced in at the time by all parties, will not, after the lapse of fifteen years, be set aside.

11. To render a former adjudication an estoppel, the point adjudicated must have been admitted, or distinctly put in issue in the course of the former adjudication.

12. Parol evidence, in aid of the record to establish an estoppel, cannot be tolerated.

13. An answer and cross-bill filed by a person not named in the bill, nor admitted as a defendant, will be stricken from the files.

In equity.

Stevenson Burke and Porter, Harrison & Hines, for complainants.

George W. Howk and Hendricks, Hord & Hendricks, for defendants.

McDONALD, District Judge. This is a bill in chancery filed January 29, 1868, by John P. Putnam, a citizen of Massachusetts, and Herman Ely and Stevenson Burke, citizens of Ohio, against the New Albany and Sandusky City Junction Railroad Company and the city of New Albany,—both Indiana corporations,—and Thomas L. Smith and thirty-three others, citizens of Indiana, and subscribers to the stock of said company.

On the 26th of June, 1868, the defendants, the city of New Albany, Thomas L. Smith, John S. McDonald, Benjamin F. Scribner, Horatio N. Duval, Thomas Danforth, William S. Culbertson, John B. Crawford, Ephraim S. Whistler, Bela C. Kent, Alexander J. Kent, Michael C. Kerr, Isaac P. Smith, John H. McMahon, Lawrence Bradley, James Montgomery, Samuel Montgomery, George V. Howk, Bradford E. Scribner, John F. Anderson, John B. Winstandley, Jesse J. Brown, and Augustus Bradley, filed a demurrer to the bill. Ezekiel R. Day, one of the defendants, has filed his answer to the bill, and a cross-bill against his co-defendants. Henry Beharrel, a mere volunteer, has entered an appearance, and filed his answer and a cross-bill. The defendants, who have demurred to the original bill, also demur to these cross-bills. The case is now before the court on these demurrers.

As to the answer and cross-bill of Beharrel, we may as well say at once, that, as he is not named in the original bill, and has not been admitted a defendant by the court, he is an intruder, and his answer and cross-bill are ordered to be taken off the files. We have no concern with him in this suit, and advise him not to intermeddle in other people's business.

I. We will first consider the demurrer to the original bill. This bill charges that, on the 14th of November, 1857, in the Floyd circuit court, Indiana, one William F. Pierson and Harvey Seymour recovered a judgment against said railroad company for fifty-four thousand eight hundred and fifty-five dollars, as trustee for the present complainants and those whose interests they represent, in certain proportions stated in the bill; that about the 30th of March, 1858, thirteen thousand three hundred and sixty-eight dollars and eighty-three cents was paid on that judgment, leaving then due thereon in principal, interest and costs, forty-two thousand seven hundred and twenty dollars and forty-one cents, no part of which has ever been paid; that afterwards execution was duly issued on said judgment and returned nulla bona; and that said company then was, ever since has been, and now is, wholly destitute of property subject to execution, and long since abandoned its enterprize, and ceased to maintain an official organization.

The bill further alleges that the city of New Albany, for subscriptions made November 19, 1853, to the capital stock of said railroad company, is indebted to that corporation in the sum of three hundred and ninety-three thousand dollars, with interest thereon payable semi-annually, at six per cent., from and after the first of January, 1856—the principal being payable January 1st, 1874; that no part of said principal or interest has been paid; that more than seventy thousand dollars of said interest is now due; and that "by some pretended compromise made between said city and said railroad company, after said railroad company became insolvent, said city obtained possession" of the bonds which had

been issued on said subscription, and procured an attempted concellation of said subscription,—all of which doings were and are illegal, null, and void.

The bill also avers that the other defendants to the bill severally subscribed large sums of money to the capital stock of said company in the year 1855, the amount of each of which subscriptions is stated in the bill. And it is averred that all these draw interest from the first of January, 1855; and that no part of the principal or interest has been paid. The bill prays that the amount of money due by each of the defendants to the railroad company be ascertained; that enough of the money so found due to pay off the said judgment be ordered to be applied to the payment thereof; and that such other relief as justice and equity require be decreed.

In support of the demurrer, the following objections are urged to the bill:

1. It is argued that, upon the face of the bill this court has no jurisdiction of the cause. The bill sufficiently states that the complainants and defendants are citizens of different states; so that, under the provisions of the constitution and the judiciary act, there can be no doubt of our jurisdiction over the persons of the parties.

But it is argued that we have no jurisdiction of the subject matter of this suit. This objection stands on the fact that the judgment mentioned in the bill, and sought to be enforced in this proceeding, was rendered by a state court; and that suitors having elected to pursue their remedy in a state court of competent jurisdiction, and having obtained a judgment there, cannot then abandon that forum, and seek the satisfaction of that judgment in a national court. It is undoubtedly a general rule that when the courts have concurrent jurisdiction of the same subject matter, the first that takes the jurisdiction excludes the other. Shelby v. Bacon, 10 How. [51 U. S.] 56; Taylor v. Carryl, 20 How. [61 U. S.] 583; Freeman v. Howe. 24 How. [65 U. S.] 450. But this rule is subject to many exceptions. Indeed, it seems to apply only in cases where the parties are the same or stand in privity to each other, and where the points in litigation and the redress sought in both courts are identical. Thus, in the case of Buck v. Colbath, 3 Wall. [70 U. S.] 334, it is held that the rule in question is subject to some limitations, and is confined to suits between the same parties or privies seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all matters which may by possibility become involved in it. And Mr. Justice Miller, in delivering the opinion in that case, said "in examining into the exclusive character of the jurisdiction of such cases. we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits. For example, a party having

notes secured by a mortgage on real estate. may, unless restrained by statute, sue in a court of chancery to foreclose his mortgage, and in a court of law to recover a judgment on his notes, and in another court of law, in an action of ejectment, to get possession of the land. Here in all the suits, the question at issue may be the existence of the debt mentioned in the notes and mortgage; but as the relief sought is different, and the mode of proceeding is different, the jurisdiction of neither court is affected by the proceeding in the other. And this is true notwithstanding the common object of all the suits may be the collection of the debt." This reasoning appears to be sound; and it is applicable to the case at bar. Its test is to "regard the nature of the remedies, the character of relief sought, and the identity of the parties in the different suits." Here the nature of the remedies is different. The remedy sought in the state court was an action at law, followed by a fieri facias; but the remedy in this court is by a bill in chancery to force the company's debtors to pay this judgment. In that case, the character of relief sought was to oblige the company to pay the debt; in this case, the character of relief sought is to make the debt from others than the company. And in that action, the parties were not the same as in this. It is true, indeed, that in the suit in the state court, the present complainants appear to have been represented by their trustees, and were therefore privies to that proceeding; but the defendants in the two suits are in no sense the same. None of the parties who demur to this bill were parties to the action in the Floyd circuit court. As to them, that proceeding was res inter alios acta. Moreover, this bill does not propose to litigate, or in any manner affect, any point that was litigated in that action.

It is argued, however, that the present suit is merely ancillary to the case in the state court; and that, merely being in aid of it, it should be carried on in that forum. But, though the premises may be true, the conclusion is a non sequitur. The case of Hatch v. Dorr [Case No. 6,206], does not support this conclusion. It merely holds that a creditor's bill, seeking to obtain the fruits of a judgment at law is so far a continuation of the suit at law originally pending in the same court, as to render the citizenship of the parties to the bill unimportant to the jurisdiction of the court.

But, so far as this court is concerned. this question must be deemed res judicata. In Shields v. Thomas, 18 How. [59 U. S.] 253, it is settled that a bill in aid of a prior decree of another court may be sustained in a United States circuit court. So, in the case of Barber v. Barber, 21 How. [62 U. S.] 582, it was held that the district court of the United States for the district of Wisconsin had jurisdiction to entertain a bill to enforce a decree for alimony rendered in a state court of New York. It has been argued, indeed, that these cases in

Howard are not in point, because the judgments attempted to be enforced were not rendered in the same states respectively in which the bills to enforce them were brought. It is impossible to perceive how any importance can arise from this circumstance. Surely if this court can entertain a bill in aid of a judgment rendered in a state court of New York, it could do the same thing if the judgment had been rendered in Indiana. But a case in this respect exactly like the one at bar has passed the ordeal of the supreme court of the United States. We allude to the case of Ogilvie v. Knox Ins. Co., 22 How. [63 U. S.] 380. That was a creditor's bill filed in this court in aid of judgments at law rendered in the circuit court of Knox county, Indiana It sought to make the debtors of the insurance company liable to the payment of those judgments. In every respect, the case was almost identical with the one under consideration. The case was twice in the supreme court (2 Black [67 U. S.] 539), and twice that court held the bill good. It is true that there is nothing in the case as reported indicating that any question of jurisdiction was raised before that court. But it would be presuming too much to suppose that the court twice decided that bill to be good, if on its very face it appeared that the court in which it originated had no jurisdiction of it. Certainly, if we had jurisdiction in that case, we have in this.

This objection to the jurisdiction is also urged on the ground that the complainants have a full and ample remedy at law. In Indiana, the Code of Civil Procedure provides a remedy called "proceedings supplementary to execution." 2 Gav. & H. 260. This provision of the Indiana Code has been adopted as a rule of this court; and it gives a remedy as full and ample as the proceeding by creditor's bill can give. Whether, in urging this objection, counsel mean to say that the complainants have a plain and adequate remedy at law in the state court that rendered the judgment, or in the United States court in which the judgment is sought to be enforced, or in both these courts, is not very apparent. But, in the view I take of the question, this uncertainty can make no difference. For I think that whatever be the force of the statutory remedy in aid of execution, it is only cumulative; and that it cannot take away the old remedy by creditor's bill.

2. The next objection urged in support of the demurrer, is that, on the face of the bill, the claim is so stale, that a court of equity ought not now to take jurisdiction of the cause. Courts of equity are very reluctant to sustain a demurrer to a bill on the ground of staleness alone, unless it is such that the delay would bar a suit at law on the same claim, or unless there is a clear and strong analogy between the case in chancery and a case at law on which a statute of limitation would operate.

By all the Indiana statutes of limitation, the period of time fixed does not begin to run till the day on which "the cause of action accrued." On written contracts and judgments, these statutes fix the period of limitation at twenty years; on contracts not in writing, the period is six years. To which of these periods does the case at bar apply? Does the cause of action set up in the bill stand on a contract not in writing, or on written contracts or records? I think this question is easily answered. The judgment for fifty-four thousand eight hundred and fifty-five dollars—the various subscriptions for stock—the executions of divers coupon bonds—the failure to effect satisfaction of the judgment by execution on it—all of these stand on written contracts and records. These plainly constitute the cause of action set up in the bill. It will not do to say that the fraudulent cancellation of the city's bonds, as charged in the bill, forms a part of the cause of action. For the bill would be good without that charge; it was probably only inserted in anticipation of matter of defense in the answer. I think, therefore, that the present case falls within the limitation of twenty years, and not within any other limitation fixed by the legislature of Indiana; and that, as all these matters arose much less than twenty years ago, the objection on the ground of staleness cannot prevail.

3. It is urged that the bill is defective for not making exhibits of copies of the judgment, bonds, and subscriptions mentioned in it. I think there is nothing in this objection. I find no authority to support it. On the contrary, the case of Cecil v. Dynes, 2 Ind. 266, is expressly against it. In view of the twenty-sixth rule in chancery promulgated by the supreme court, I should think that no exhibit need be filed with any bill.

II. Our next inquiry is as to the demurrer to the cross-bill filed by Ezekiel R. Day. This cross-bill is filed against Day's co-defendants to the original bill. The complainants to the original bill are not made parties to it. It merely proposes a litigation between the defendants to the original bill, all of whom are citizens of Indiana—a litigation in which the original complainants have no interest.

The cross-bill charges that Day, besides subscribing five thousand dollars to the stock of the railroad company, as charged in the original bill, also subscribed in addition thereto thirty-one thousand one hundred dollars, making all his stock thus subscribed thirty-six thousand one hundred dollars; that on this stock he has paid thirty-two thousand six hundred dollars—leaving yet due only three thousand five hundred dollars; that many of the subscribers, like himself, had fully or nearly paid up, but the defendants to the cross-bill had paid nothing; that these defendants ought therefore to pay the debt claimed in the original bill; and that an accounting ought to be had among all the subscribers, to ascertain how much each has paid and how much he owes on his subscription. The cross-bill prays for such accounting, for a receiver, and for a decree reimbursing Mr. Day and other subscribers for their proportionate over-payments.

In fine, it seems to propose that this court shall take jurisdiction of all the affairs of the railroad company, decree on all the rights and liabilities of all the subscribers, and wind up that company as an insolvent corporation.

It is not necessary to spend time on this cross-bill. The mere statement of its contents plainly indicates that this court cannot take jurisdiction of it. The parties to it are all citizens of Indiana. It attempts to draw into the original case a vast amount of litigation in which the complainants to the original bill are not concerned. The matter of the cross-bill is a matter over which the state courts have full jurisdiction; and the pendency of the original bill here can in no way affect that jurisdiction. Besides, it appears to me that it would be unjust to postpone the final hearing and decree on the original bill till the matters set forth in the cross-bill should be decided. The demurrer to the original bill is overruled at the costs of the parties demurring. The demurrer to Day's cross-bill is sustained, and the same is dismissed at his cost.

Afterwards, on the first day of June, 1869, this cause came on for hearing and final judgment and decree on the bill, answers, exhibits, and depositions, when the following opinion and decree were rendered:

McDONALD, District Judge. The object of this bill is to obtain a decree that the defendants pay the complainants so much of their indebtedness by way of subscriptions to the capital stock of the New Albany & Sandusky City Junction Railroad Company, as will satisfy the complainants' judgment for fifty-four thousand eight hundred and fifty-five dollars, with the interest thereon and the costs, obtained against that company.

The city of New Albany has filed a separate answer; and all the other defendants have answered or been defaulted. As there is very little dispute touching the facts of this case, it is unnecessary to state here the particulars of the facts set out in the answers. The points principally in dispute are several important legal questions. And the facts disclosed in the answers it will be most convenient to state when we come to examine those questions as they are developed in the answers and the evidence.

We shall therefore proceed at once to consider those questions.

1. It is urged on the part of the city of New Albany that, so far as appears in this case, she is not, and never was, legally indebted to the railroad company on her subscription mentioned in the bill. There certainly can be no decree against that city unless it affirmatively appears that she is indebted to the railroad company. The bill says that said city "is indebted to said railroad company in the sum of three hundred and ninety-three thousand dollars, with interest," &c., * * and that "said indebtedness arose as follows: That on the 19th day of November, 1853, the said city, by its mayor, duly subscribed to the capital stock of said railroad company the sum of four hundred thousand dollars, to be paid," &c.

But it is admitted that, at the time when said subscription was made, the city had no legal authority to make it. This has, indeed, been decided by the supreme court of Indiana, in the case of City of Lafayette v. Cox, 5 Ind. 38. But in answer to this objection to the validity of the subscription, the complainants rely on an act of the Indiana legislature, passed February 21, 1855, authorizing cities to ratify subscriptions to the stock of railroad companies previously made. That act declares that city authorities which had previously subscribed stock to railroad companies, should thenceforth have power to ratify the same.

The bill says nothing of any ratification of the subscription under said act. But it alleges "that said city, in part payment of its said subscription of four hundred thousand dollars, executed, issued, and delivered to said company two hundred bonds of one thousand dollars each; that said bonds had interest warrants or coupons attached to each for the interest at six per cent. * * * and that said bonds were delivered to said railroad company between the 25th day of March and the 9th day of June, 1854," and were payable to bearer. And whether this allegation is equivalent to an averment of a ratification under said act, is a question discussed in argument. I think this question must be decided in the negative. If the complainants occupied the position of innocent purchasers of the bonds issued by the city, that circumstance ought, perhaps, to estop the city from insisting that the bonds were illegally issued. But here the foundation of the complainants' action is a judgment against the railroad company rendered, not on bonds of the city, but on bonds issued by that company, and which, so far as appears, had no connection with the city bonds. The complainants claim to have their judgment satisfied out of a debt due by the city to the railroad company; and if the debt so due is not a legal debt, they cannot recover. That, at the time when the subscription was made, the city had no power to create a legal debt thereby, is settled by said decision in 5 Ind. 38. And it is equally certain that by virtue of the act above cited the city might have legalized and ratified said subscription. But there is nothing in the bill showing that such a ratification was ever executed. It therefore does not appear by the bill that the city is legally indebted to the railroad company. If my attention had been called to this defect in the bill when I decided the demurrer to it, I would have sustained the demurrer to it. But it was not. It now, however, becomes a question whether the answer of the city has not cured this defect. It says: "This respondent is advised that it is pretended and claimed by said complainants and others that said unauthorized and

void subscription of stock to said railroad company was, after said pretended making thereof, ratified by said common council pursuant to power conferred by a subsequent act of the general assembly, entitled, 'An act to enable cities which have subscribed for stock in companies incorporated to construct works of public utility under the 56th section of the general act for the incorporation of cities to ratify the same, approved February 21, 1855.' But respondent says that said unauthorized contract and subscription of stock has never been ratified by said common council or by said city, pursuant to the authority conferred by said last act, or otherwise; and that the same remains and is void." To this answer the complainants have filed a general replication in the usual form, which distinctly makes an issue on the matters above cited from the answer of the city. Issue is fairly taken upon them. These allegations in the answer, as denied in the replication, supply the defect in the bill. There is abundant evidence to prove the subsequent ratification, and it must therefore follow that the objection to the legality of the subscription by the city cannot be sustained.

2. The defendants object that the judgment set out in the bill is a judgment in rem only, and not a judgment in personam; and that therefore this action must fail. The record of the judgment in question discloses a proceeding to foreclose a mortgage according to the forms and practice of the Indiana Code. The complaint in the case had the common prayer for foreclosure, "and for all other proper relief." The statute under which said foreclosure proceedings were had provides that, when there is a written agreement to pay the debt secured by the mortgage, as there was in the case in question, the court should "direct in the order of sale that the balance due on the mortgage and costs, which may remain unsatisfied after the sale of the mortgaged premises, shall be levied on any property of the mortgage debtor; and that a copy of the order of sale and judgment shall be issued and certified by the clerk under the seal of the court to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the judgment, interest, and costs as upon execution; and if part of the judgment, interest, and costs remain unsatisfied, the sheriff shall forthwith proceed to levy on the residue of the other property of the defendant." 2 Gav. & H. 294, 295.

The statute cited undoubtedly contemplated a personal judgment in proceedings to foreclose a mortgage. Under it, the practice has always been to take personal judgments for the whole debt secured by the mortgage, in such proceedings. The judgment in question is on its face a personal judgment. It is that the complainants "recover of said railroad company the sum of,"

&c., "and that said mortgage be foreclosed," &c. There is nothing in this objection.

3. On the part of the city of New Albany, it is urged that though the said subscription is valid, and though said judgment is a personal judgment, yet the city has made a perfect accord and satisfaction for the said subscription and for the bonds issued thereon to the railroad company, and is therefore not liable in this action. If these premises are true, the conclusion is inevitable.

By the city's answer and the evidence, the following facts are established: In the year 1837, the railroad company owed the Ohio Insurance Company thirty-six thousand dollars for borrowed money. In August of that year, the railroad company truly represented to the city council that the railroad could not be built, and that the company was utterly insolvent; and it thereupon proposed that if the city would pay the said debt of thirty-six thousand dollars to the Ohio Insurance Company, the railroad company would release and give up to the city her subscription of four hundred thousand dollars, and the bonds that had been issued on that subscription. The city accepted this offer, and paid said thirty-six thousand dollars; and the railroad company cancelled the subscription and delivered all the bonds she had issued on it but seven. At first blush this looks like a good accord and satisfaction of the debt in question. And it certainly would be good if it did not affect the rights of the creditors of the railroad company.

The question arising on this state of facts is, Is said compromise valid as against the creditors of the company? It is certain, as a general rule, that parties capable of contracting may at their pleasure rescind their contracts and may settle their mutual obligations by mutual accord and satisfaction. To this rule, however, there are exceptions; and the complainants insist that the present case is an exception to it.

That at the time of this supposed compromise the railroad company was utterly insolvent, and that the common council of the city of New Albany had at that time notice of that insolvency, are facts explicitly stated and admitted in the answer of the city.

Under these circumstances, had the city power to annul her subscription by the accord and satisfaction mentioned in her answer? If the creditors of the company had a lien on the stock subscribed for the payment of their debts, it would seem that the subscription in question could not be annulled without the consent of those creditors. For the most prominent exception to the above-named rule touching the right of parties to a contract to rescind it, is that when the interests of third persons have become involved in a contract it cannot be rescinded without their consent. In the case of Wood v. Dummer [Case No. 17,944], Mr. Justice Story held

that the capital stock of a corporation is, on general principles, to be deemed a pledge, or trust fund, for the debts contracted by the corporation; and that since corporators are not personally liable for the debts of their corporation, the capital stock assumes the liability, and to this fund credit is universally given by the public as the only means of repayment. And he held that, as the capital stock is a "trust fund," it might be followed into the hands of any person having notice of the trust attached to it. In Slee v. Bloom, 19 Johns. 456, where an insolvent corporation undertook to discharge its stockholders on the payment of thirty per cent. of their subscriptions, it was held that such a discharge was void as against creditors. And Mr. Justice Spencer characterizes it as "an attempt to get rid of a responsibility which the law and common justice imposed." In Mann v. Cooke, 20 Conn. 178, a compromise of a subscription of stock very much like the present was held to be a fraud both on other stockholders of the corporation and on its creditors. These authorities, and many others to the same effect, establish the rule that the unpaid capital stock subscribed to a corporation cannot, by any agreement between the subscriber and the body politic, annul it so as to affect the rights of creditors. Indeed, a decision authoritative in this court—Bell v. Mobile & O. R. Co., 4 Wall. [71 U. S.] 598—goes even farther than this, and holds that "it is very clear that a municipal corporation * * * could not modify or alter the subscription voted by the people" of stock to a railroad company, unless authorized to do so by the legislature.

I conclude, therefore, that this subscription of stock which had been voted by the citizens of New Albany, and subscribed in pursuance of that vote, thereby became a trust fund in favor of the creditors of the railroad company, and that they had such an interest in it, that, without their consent, the subscription could not be annulled.

4. The defendants set up in their answers, as a bar to this action, a former adjudication of the complainants' cause of action. The answer states that, in February, 1863, one William Lindley filed in the Floyd circuit court, Indiana, a complaint against the present complainants and others, alleging that he—Lindley—was the owner of three of the bonds mentioned in the trust deed which, as already stated, the railroad company executed to Pierson and Seymour, and praying a foreclosure and sale of the mortgaged premises mentioned in the trust deed. The answers further state that the defendants to that action, in May, 1864, filed answers and cross-complaints thereto; and that such proceedings were thereupon had, that the Floyd circuit court finally adjudged and decreed, that the present complainants and the persons under whom they hold had received full payment and satisfaction of the claims on which the present action is brought.

In proof of this defense of a former adjudication of the complainants' demand, a transcript from the Floyd circuit court is produced. By this transcript it appears that in February, 1863, a suit was brought in said court as alleged in the answers above referred to. The suit was brought by Lindley "for himself and for all others holding bonds similar to the three held by him." The complaint says nothing about the payment or satisfaction of the claims sued on in the present suit. By the transcript it appears that said suit by Lindley continued on the docket till February, 1868, during which period answers, replications, cross-complaints, demurrers, and exhibits "voluminous and vast" were filed and discussed. The transcript shows that, on the day last aforesaid, the complainants in the present suit, Putnam, Ely, and Burke, appeared in said suit of Lindley, and, "joining in the plaintiff's complaint therein, filed separate answers averring therein that they are severally the owners and holders of certain of the bonds described in the mortgage mentioned in said complaint, and severally demand judgment for the amount due on their several bonds, and the relief asked in the complaint." These answers merely set a claim to the bonds referred to, and pray judgment on them. I have carefully searched this transcript containing ten thousand six hundred and seventy-six lines; and I cannot find that these answers of Ely, Putnam, and Burke were ever replied to by any one, or that any sort of issue was ever taken on them. Nor does the transcript show that any of the parties to Lindley's suit ever suggested or alleged anything touching the payment or satisfaction of the bonds on which the claims of Ely, Putnam, and Burke were founded. But it appears that afterwards the cause was submitted to the court for trial without a jury; and the court thereupon, among other things, found that all the bonds mentioned in said trust deed, including those held by the complainants, Ely, Putnam, and Burke, and their judgment for fifty-four thousand eight hundred and fifty-five dollars had been fully paid, satisfied, and extinguished; and the court rendered judgment accordingly.

It should be noted that the judgment for fifty-four thousand eight hundred and fifty-five dollars in favor of Ely, Putnam, and Burke, on which their present suit is founded, and which was rendered on the identical bonds in question, was pronounced November 14, 1857; and that the finding and judgment declaring these bonds and that judgment to have been paid, satisfied and extinguished, occurred in February, 1868, while the present suit was pending in this court.

Under these circumstances, the defendants contend that the finding and judgment of the Floyd circuit court in February, 1868, that the bonds and judgment in question had been paid, satisfied and extinguished, estops

the complainants to say that their judgment for fifty-four thousand eight hundred and fifty-five dollars rendered on these bonds is valid and unsatisfied.

It is not pretended that the record in the Lindley suit shows that any issue was made touching the payment, satisfaction, or extinguishment of the bonds and judgment under consideration. Nor do the defendants rest the matter on that ground. But they insist that the finding and judgment without such an issue operate as an estoppel. In Duncan v. Holcomb, 26 Ind. 378, it is held that "it is only those matters that are involved in the issues made by the pleadings that are considered res judicata." The doctrine of estoppels by records does not apply "to points which came only collaterally under consideration, or were only incidentally under cognizance, or could only be inferred by arguing from the decree." Hopkins v. Lee, 6 Wheat. [19 U. S.] 109. In Duchess of Kingston's Case, it is settled: "First, that the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or, as evidence, conclusive, between the same parties upon the same matter, directly in question in another court; secondly, that the judgment of a court of exclusive jurisdiction directly upon the point, is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court for a different purpose. But neither a judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." See the case in 2 Smith, Lead. Cas. 424, and notes. From these authorities, and many others, I think the true rule is that to create an estoppel by former judgment, the point in question must either have been admitted on the record, or an issue must have been made on it and decided against the party against whom it is offered in evidence.

But the defendants, appearing to admit the correctness of this rule, have produced parol evidence to prove that on the trial in the Floyd circuit court, the parties verbally agreed to let in evidence, under the answer filed, touching the payment and satisfaction of the bonds and judgment in question. I think it is very clear that parol evidence of such agreement is inadmissible. To allow parol evidence in aid of the record in order to establish an estoppel, is not to be tolerated. What has been done in a court of record must be proved by its record; and to prove it by parol would violate the plainest principles of law. I am of opinion, therefore, that the supposed matter of estoppel set up in this defense does not bar this action.

5. All the defendants, except the city of New Albany and the railroad company, set up a defense deduced from the terms of their original subscription of stock by them to the railroad company, by which it was stipulated that on the happening of a certain event all their subscriptions, except six shares of stock to each of them, should cease to be binding on them.

In support of this defense the following facts are averred in their answers and proved by the evidence: The said railroad company was incorporated under the general laws of Indiana for organizing railroad companies. These defendants subscribed the articles of association preparatory to the organization of the company. In these articles and in their subscription of stock, it was stipulated that, if the city of New Albany should afterwards subscribe to the capital stock of the company fifty thousand dollars or more, then these defendants should only be held for six shares each of their respective subscriptions; and that the residue thereof should be deemed transferred to the city as part and parcel of its anticipated subscription. These stipulations were provided because all these defendants were residents and property holders of the city; and it was deemed too great a burden on them, to pay both the large subscriptions they were making and also their proportion of the tax that would devolve on them in order to pay the anticipated subscription of the city. This arrangement was agreed to by all parties. Under it the company was organized. Afterwards the city subscribed four hundred thousand dollars to the capital stock of the railroad company. Thereupon the company accepted so much of the city's subscription as was necessary for that purpose in lieu of the subscriptions of these defendants over and above six shares each, and discharged each of them from liability to pay on his subscription for more than six shares, which each of these defendants then fully paid. This arrangement has ever since been acquiesced in, and acted on by all parties concerned till the present suit was commenced. And the substance of the whole thing seems to me to have been a substitution of a part of the subscription of the city for the subscription of each of these individual subscribers over his six shares. And it seems to have been a reasonable, equitable, and honest arrangement. And if it was lawful, these defendants are not indebted to the railroad company.

But the complainants contend that this arrangement was unlawful. They insist that it was unlawful, because the general law under which this railroad company was incorporated absolutely requires that, as a necessary prerequisite to an incorporation, fifty thousand dollars, or one thousand dollars per mile of the road, must be subscribed; and that such subscription must be absolute, and not contingent on any condition whatever.

I am inclined to think that, in order to entitle an association of persons to be incor-

porated under the general railroad law of Indiana, there must be a prior subscription of stock to the amount required, absolute and unconditional. By the record and the evidence in this case, it does not appear, however, that such an amount was not absolutely and unconditionally subscribed by persons other than these defendants. And as it is conceded on all sides that this company was duly incorporated, if a conditional subscription alone of the requisite amount would make the incorporation invalid, it might perhaps be fair to presume that the requisite amount had been subscribed by others than these defendants. As a general rule, it is certain that a conditional subscription of stock is valid under the railroad laws of Indiana. And it would seem to be a hard rule to hold that, in any such case, the condition must be rejected as a nullity, and the subscription be deemed valid and unconditional. If a conditional subscription be unlawful, perhaps it would be more reasonable to hold the whole contract void for illegality.

But be this as it may, I think that the most we can make of the matter is this: The proceeding to organize under these conditional subscriptions was perhaps an irregularity. Perhaps, for that irregularity, the state might have interposed by quo warranto, and put a stop to the corporate proceedings. But everybody acquiesced in the whole thing. The conditions in the subscriptions under consideration were carried into effect by all the parties concerned at a time when it is not pretended that the railroad company was insolvent. It may be fairly presumed that these conditional subscriptions materially contributed to the inducements which led the city of New Albany to make her large subscription to the capital stock of the company. The whole arrangement was perfected, and has been acquiesced in by all parties. And it is too late now, after the lapse of more than fifteen years from its consummation, to set it aside, and to hold these men liable to the complainants for subscriptions thus disposed of.

I am of opinion therefore that these defendants are not indebted to the railroad company; and that consequently the complainants can have no recovery against them. It follows that, as to all the defendants who are sued as individual subscribers to the capital stock of the railroad company, the bill must be dismissed at the costs of the complainants. As to the city of New Albany, I am of opinion that the complainants have made out their case.

It is therefore ordered, as to the city of New Albany, that this case be referred to the master with directions to him to ascertain how much is due to each of the complainants on their judgment for fifty-four thousand eight hundred and fifty-five dollars mentioned in their bill with interest up to the time of his report, as also the costs due to them on that judgment; and that he report the same to this court.

NOTE. The above statement by Judge McDonald that, as to the individual subscribers, the bill would be dismissed, must refer to those subscribers who had duly prosecuted their defense, for two of the defendants, Ezekiel R. and Silas C. Day, were defaulted, and on the enrollment of the decree herein, judgment was entered against E. R. Day for $6,230, and against S. C. Day for $3,026, with a provision that any money collected from the Days should be applied in reduction of the decree against the city, and upon full payment by the city no execution should issue against the Days. To set aside this finding against them, E. R. and S. C. Day filed a bill of review in this court, on the hearing of which before Judge Drummond, November term, 1872, the prayer was granted, and these findings set aside. [Unreported.]

In the appeal by the city of New Albany the supreme court held that the laches of the complainants was sufficient to bar the relief asked in their bill, and reversed the decree so far as the city was concerned, and ordered the bill dismissed as to it. New Albany v. Burke, 11 Wall. [78 U. S.] 96.

In the appeal by the complainants as against the individual defendants, the supreme court affirmed the decree below. Burke v. Smith, 16 Wall. [83 U. S.] 390.