## LEMOINE *v.* DUNKLIN COUNTY.

*(Circuit Court, E. D. Missouri, E. D.* April 27, 1889.)

1. VENDOR AND VENDEE—RIGHTS AND REMEDIES—PUBLIC LANDS—LIMITATION OF ACTIONS.

A bill alleged the purchase of swamp lands from the defendant county 30 years before, the payment of the price in full, and the issue of certificates entitling the holder to a patent from the governor; and further averred the duty of the governor to issue the patent until a short time afterwards, when power to issue patents was conferred on the county court; and the bill asked that the county be decreed to convey the legal title. *Held,* that as the bill disclosed the relation of trustee and *cestui que trust* as to the legal title, and as there were no allegations concerning the possession, and it was not shown that the county had done anything in disaffirmance of the trust until a short time before suit, nor that third persons had acquired intervening rights, the court could not declare on demurrer that complainant was barred by the statute of limitations.

2. SAME—LACHES.

Neither does the bill disclose such laches as will bar the right to relief.

3. SAME—CONSTRUCTIVE POSSESSION.

Whatever constructive possession the county may have by reason of its being vested with legal title does not bar complainant's right. Actual adverse possession is necessary for that purpose.

In Equity. On demurrer to amended bill.

Suit by Louis R. Lemoine against Dunklin county.

*Cunningham & Eliot,* for complainant.

*George H. Shields* and *Eleneious Smith,* for defendant.

THAYER, J. The case presented by the bill is that of a vendee of land who has paid the purchase money, seeking to have the legal title divested out of the vendor and vested in himself. It has long been settled that the relation of vendor and vendee, under such circumstances, is that of trustee and *cestui que trust.* 2 Story, Eq. Jur. § 789. When the purchase money has been paid, the vendor becomes a mere trustee of the legal title for the purchaser. 1 Perry, Trusts, §§ 231, and 122. Trusts of that character undoubtedly answer to the definition ordinarily given of an implied trust, being trusts that are not expressly declared, but are inferred from a given contract or transaction. The terms "express," "implied," "resulting," and "constructive," as applied to trusts, have not always been used with technical accuracy. In some cases a trust has been termed an express trust that was in reality an implied trust, and instances are quite common where constructive trusts have been spoken of as implied trusts, and *vice versa.* In reality resulting and constructive trusts are species of implied trusts. These remarks are made because great stress was laid on the fact that the trust described by the bill is an implied trust, and important consequences are deduced from such classification. Because it is of the nature of an implied trust, it is contended that the relief sought by the bill was barred 10 years after the creation of the trust, in analogy with the rule that prevails at law in actions to recover real property. Now, the bill shows (and the case must be dis-

posed of solely with reference to its averments) that in January and April, 1857, certain persons under whom complainant claims purchased of Dunklin county certain swamp lands to it belonging, and paid for the same in full, and received from the county register certain certificates of purchase, which on their face purported to entitle the holder to a patent on presentation thereof to the governor of the state. The bill avers that it was the duty of the governor to issue patents for such lands upon the production of such certificates up to June 3, 1857, when the power to issue such patents was conferred on the county court, where it has since resided; that an application for a patent under the certificates was made by complainant on July 6, 1886, and was refused. No reason is assigned for not making an earlier application for a patent. The bill contains no allegations touching the possession or occupancy of the lands in the mean time; nor does it appear that the county ever did any act in disaffirmance of the trust prior to July 6, 1886, or that the rights of third parties have intervened. Can the court then declare on demurrer that complainant's right to have the legal title transferred to him, is barred either by limitation or laches? The law has been long and well settled that the trustee of an express trust cannot invoke the statute of limitations against the *cestui que trust*, until he has done some act in open violation 'or in disaffirmance of the trust. *Oliver* v. *Piatt*, 3 How. 411; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Lewis* v. *Hawkins*, 23 Wall. 126; *Seymour* v. *Freer*, 8 Wall. 202; 2 Perry, Trusts, § 863, and cases cited. In *Lewis* v. *Hawkins, supra,* the rule was applied to a case arising between the vendor and vendee of lands. The vendee, who had gone into possession under a contract to purchase and a bond for a deed, and had remained in possession for a period much longer than would suffice to bar a suit at law for possession, without having paid any portion of the purchase money in the mean time, interposed a plea of limitation and laches to a suit brought to foreclose the lien for the purchase money. It was held that the vendee in possession stood in the relation of a trustee for the vendor as to the purchase money, that the vendor held the legal title in trust for the vendee, that the vendee's possession was not adverse to the vendor, and that the plea was of no avail. In that case, it is true, the court said that the bond for a deed and notes for the purchase money established an express trust, but whether that was or was not a correct classification of the trust appears to me to be unimportant. The certificates of purchase described in the bill created a trust of precisely the same character, and quite as clearly, as the documents referred to in *Lewis* v. *Hawkins.* The case of *Seymour* v. *Freer*, 8 Wall. 202, is also in point. In that case a trust arising by implication out of a contract for the purchase and sale of lands was enforced against the trustee, or, rather, against his heirs, long after the time that a suit at law to recover the lands would have been barred by the statute, nothing having been done in the mean time by the trustee in disaffirmance of the trust, or to render the enforcement of the same harmful to third parties. The rule applied in these cases seems to be clearly applicable to the case at bar. The trusts involved are of the same character, and the trust mentioned

in the bill is as clearly established by the certificates of purchase issued by the county register as the trusts involved in the cases last cited. The case of *Ruckman* v. *Cory,* 9 Sup. Ct. Rep. 316, is also instructive as showing after what lapse of time courts of equity have decreed a transfer of the legal title to one who holds the equitable title to lands. Inasmuch as it does not appear that the defendant denied the trust prior to July 6, 1886, or that other rights have intervened since the purchase, and, inasmuch as it does appear from the averments of the bill that the defendant is a mere trustee of the legal title, the purchase money having all been paid, the court does not feel warranted in declaring on demurrer that complainant is barred of his remedy. Furthermore, I do not think that the facts stated in the bill raise the presumption that defendant has been in actual occupation of the lands since the sale. Constructive possession, as has been urged, does follow the legal title, but, as was held in *Bollinger* v. *Chouteau,* 20 Mo. 95, that is a fiction of the law adopted for the protection of vacant lands, and to give the true owner a right of action against trespassers. Such constructive possession never operates to extinguish a legal right. Whatever constructive possession the defendant may have had by reason of its being vested as trustee with the legal title since the sale, will not bar complainant's right. Actual adverse possession is certainly requisite for that purpose, and the bill does not raise the presumption of such possession in the defendant.

Various cases have been cited by defendant's counsel with a view of establishing that the cause of action is stale, but the court has not been able to concur in that view. The case of *Speidel* v. *Henrici,* 120 U. S. 377, 7 Sup. Ct. Rep. 610, is first referred to. In that case the court found that the trustee proceeded against had disaffirmed the trust 50 years before the bill was filed. The bill showed that for that period the trustee had constantly avowed that he held the trust property upon a trust entirely different from that which complainant sought to establish and enforce. In other words, the case was decided on the theory that the trust had been disavowed for such a length of time that the complainant, who had knowledge of such disavowal, was barred of his right by laches. In the case of *Marsh* v. *Whitmore,* 21 Wall. 182, an effort was made to establish a constructive trust in personalty nearly 12 years after the transaction out of which it arose. The bill did not state exactly when or how complainant became aware of the transaction out of which the trust arose, and it was accordingly held to be demurrable. The rule is well settled, of course, that a person who seeks to enforce a constructive trust, or obtain equitable relief on the ground of fraud, must act diligently on discovering the fraud, or the transaction out of which the trust arises, as the trustee in such a trust always holds adversely to the beneficiary, and the right to pursue him may be easily lost by laches. The case of *Brown* v. *Buena Vista,* 95 U. S. 157, was a bill filed to set aside a judgment on the ground of fraud, and the proceeding was held to be barred by laches. The case is not important, except in so far as it shows that in such cases a complainant must act with commendable promptness after discovering the fraud. In the case of *Hume* v. *Beale,*

17 Wall. 347, a bill was filed to charge the estate of a trustee for a breach of trust committed 37 years before the suit was instituted. The breach of trust had been known to complainant for many years, and it was for that reason held that equity would not grant relief. *Badger* v. *Badger*, 2 Wall. 92, was a case in which a bill was filed against an administrator to obtain relief against frauds perpetrated in the course of the administration. It appeared that the complainant might have discovered the alleged frauds at any time within 30 years before the bill was filed, even if he had not had actual knowledge thereof during that period, and the cause of action was accordingly adjudged to be stale. *Godden* v. *Kimmell*, 99 U. S. 201, is of the same general character as the case last mentioned. The equitable doctrine of laches which these cases serve to illustrate does not, in my opinion, materially aid the defendant in this case, because it ought to be applied in analogy with the rules which prevail at law; and inasmuch as a trustee of a trust, such as is involved in the present suit, cannot invoke limitations until a sufficient period has elapsed after he has openly disavowed or violated the trust, it sems reasonable that laches ought not to be imputed to the *cestui que trust*, unless there was an open disavowal of the trust prior to July, 1886, or unless a state of facts is established which renders the enforcement of the trust at this time for some reason inequitable. The fact that the legal title to the lands was in the state, or at least could only be conveyed by the governor when the first certificate was issued, does not, in my opinion, alter the case. From the time it was vested in the county, the county clearly held the title in trust for the vendee, who had paid the purchase money. For these reasons I shall overrule the demurrer. If there are any reasons why the legal title ought not to be divested out of the county, they must be brought forward by plea or answer. The court cannot say merely on an inspection of the bill that the relief sought is barred by laches. To warrant such a ruling the case ought to be free from doubt, as was said in *Putnam* v. *New Albany*, 4 Biss. 365. The court in the present case is not asked to compel a trustee to render an account of transactions that occurred years ago, after witnesses have perhaps died, and vouchers have been lost. If the case were of that character, the doctrine of laches might be invoked with greater reason on the ground stated in *Stearns* v. *Page*, 1 Story, 204, and *Hume* v. *Beale* and *Godden* v. *Kimmell*, above referred to. No account is sought or appears to be necessary in the present case. According to the showing made by the bill the defendant is a mere trustee of the legal title to lands, the equitable ownership of which is in the complainant, and the only relief sought is that the legal title may be vested in the complainant. The trust is clearly evidenced by certificates of purchase granted by the proper county officers, and the equitable owners appear to have dealt with the lands as their own, by executing mortgages thereon and conveyances thereof, which appear to have been duly recorded in the county. I am of the opinion, therefore, that the defendant should be ruled to answer the bill, and it will be so ordered.