### ANSTICE, administrator, &c. vs. BROWN and others.

Where an attorney, who was employed to collect a partnership debt due to a firm the members of which were aliens, compromised the debt by taking lands therefor; but on account of the alienage of the creditors and without any directions from them took the conveyance in his own name to enable him to sell the land and convert it into money, and wrote to them informing them what he had done and promising to sell the land for them as soon as purchasers could be found, but died before any sale of the land had been made; and his heirs after his death sold the land supposing it to be their own; *Held*, that the proceeds of such sale in the hands of the heirs were personal property belonging to the copartnership firm, and that the personal representative of the last surviving partner was entitled to recover such proceeds as a part of the copartnership effects.

Where land is taken in payment of a debt due to an alien, and is conveyed to a trustee upon a valid trust to sell the same and convert it into personal estate, without any unreasonable delay, for the benefit of the cestui que trust, a court of equity, upon the principles of equitable conversion, will consider the land as personal estate belonging to the alien, and transmissible to his personal representatives as such; and if necessary will compel the trustee, who holds the legal estate, to sell the land and convert it into money.

A conveyance of land to a citizen as a trustee upon an express trust to sell the same as soon as practicable and to pay over the proceeds thereof to a creditor who is an alien, is a valid trust, and does not subject the interest of the alien creditor in the proceeds of such sale to forfeiture; as the principle of public policy which prohibits an alien from holding lands, either in his own name or in the name of his trustee, without the consent of the state does not apply to such a case.

If an agent for the collection of a debt due to an alien, takes a conveyance of land in his own name in payment of such debt, without authority from his principal, and without any written declaration of trust, a court of equity will not permit a resulting trust to be created in favor of the state by escheat; but will decree the land to be sold and converted into money, for the purpose of giving the alien the benefit thereof as personal estate.

Where an heir or other person who is turned into a trustee by operation of law, contests the complainant's claim to relief after he has full notice of his equitable rights, and for his own exclusive benefit, he is not entitled to the costs of his defence.

.THIS was an appeal from the vice chancellor of the fifth circuit. In 1801, J. Cock and J. P. Crowder of London

had a copartnership demand of about $2000 against S. & H. Johnson of New-York, which they sent with other demands to Brown & Burnett their agents at New York for collection; and they afterwards sent them a general power of attorney to transact all their business in this country. After various negotiations with the Johnsons, who had stopped payment, Brown & Burnett agreed to take from them four lots of land of 100 acres each in the Holland patent in Oneida county, together with their notes for a small balance, in satisfaction of the debt. But as Cock & Crowder were aliens and incapable of holding lands, their agents concluded to take the conveyance in the name of Brown until the land could be sold and the proceeds thereof remitted to their principals. The Johnsons accordingly procured a deed of the four lots to be made to Brown, in November, 1803; which deed by mistake was recorded in the city of New York instead of the county of Oneida. Shortly afterwards Brown & Burnett wrote to Cock & Crowder that they had taken the conveyance of the 400 acres of land in the Holland Patent for them upon a settlement with the Johnsons. In this letter they also stated the reason why they had taken the deed in the name of Brown, and that they had advertised the land for sale and would sell it for them upon the first reasonable offer. Several other letters were afterwards written by them to Cock & Crowder stating that their lands remained unsold. And after the dissolution of the partnership of Brown & Burnett, which was previous to 1808, Brown, who undertook to close up the concerns of the firm, wrote several other letters to Cock & Crowder recognizing their right to the land and promising to try to sell it for them; the last of which letters was dated in July, 1809. Brown died about 1811, having sailed on a sea voyage and was supposed to have been shipwrecked and lost; leaving the defendants J. R. and A. Brown, then minors, his only children and heirs. The intercourse between the two countries being suspended by the war, Cock & Crowder did not hear of the death of Brown, and in 1819 they addressed a letter to him at New-York making inquiries as to the land; to which letter they

received no answer, his family having in the meantime removed to New-Jersey. Cock died soon after, and Crowder his surviving partner obtained no information respecting the land till about the time the deed to Brown was recorded in Oneida county, in 1828. The two children of Brown having become of age, and finding the deed to their father, supposed that he was the real owner of the land at the time of his death. They therefore employed an agent at Utica to sell the lands for them; who between November, 1823, and March, 1826, contracted to sell the several lots, except some small portions thereof which had been sold for taxes. And previous to the filing of the bill in this cause in the spring of 1829, the defendants J. R. and A. Brown had conveyed some parts of the premises to the purchasers and received a considerable portion of the purchase money, leaving another portion thereof due either upon bond and mortgage or upon the contracts.

The bill in this cause was filed by Crowder as the surviving partner of the firm of Cock & Crowder, to reach the proceeds of the sales; and the several vendees from whom a part of the purchase money was still due, together with the heirs of Brown, were made defendants. The purchasers put in an answer claiming protection as bona fide purchasers without notice of the complainant's rights. The heirs at law of Brown denied all knowledge that the land was conveyed to their father for the benefit of Cock & Crowder. They also stated in their answer that Cock & Crowder were both aliens, incapable of holding real property in this state; and they therefore insisted that there could not have been any resulting trust in their favor on the conveyance of the land to Brown, although such conveyance might have been intended to be taken for their benefit. The complainant having died pending the suit, it was revived in the name of his personal representative, and was afterwards heard before the late vice chancellor upon pleadings and proofs. The fact of the trust being fully established, the vice chancellor decided that the surviving partner of the firm to whom the debt originally belonged was entitled to the proceeds of the land, after paying taxes, agent's fees

and expenses which the heirs had incurred; that such heirs were to account for the monies received by them, but without interest; that the heirs assign to the clerk of the court, for the benefit of the complainant, all the remaining securities for the unpaid purchase money, and that the other defendants, the purchasers, pay the amounts still due from them respectively, to the clerk for the use of the complainant; that neither the complainant or the heirs of Brown recover costs as against each other; and that the complainant pay to the other defendants their costs to be taxed. A reference was also directed to a master to take and state the accounts between the parties accordingly, unless they should agree among themselves in relation thereto; and all further directions were reserved.

From the whole of this decree, except the part which gave to the purchasers their costs against the complainant, the heirs of Brown appealed to the chancellor.

*D. Wager & C. A. Mann,* for the appellants. The conveyance to John Rylan Brown would have vested in Cock & Crowder the beneficial interest in the lands by way of a resulting trust, had it not been for the disability of alienage. They being aliens, no trust could result in their favor, nor could any title vest in them by operation of law. And if they took any estate in the lands, it was an equitable estate possessing all the qualities of a legal estate; and if it was capable of being transmitted by descent, the same would, on their deaths, have descended to their respective heirs. But they being incapable of transmitting lands by descent, the same escheated. But even if the title vested in them and was transmissible to their heirs, the death of Cock, which was previous to a sale of any of the lands by the Browns, did not vest his interest or title in the lands in Crowder, as the surviving tenant in common. Neither did the sale of the lands by the Browns change the nature of the estate in equity; but the proceeds of the sale belong to the same class of representatives, and are governed by the same rules which are applicable to the lands. Therefore, on the death of Crow-

der, during the pendency of this suit, his interest escheated, he being incapable of transmitting the same by descent.

Again, the court, from lapse of time in this cause, will presume the trust to have been extinguished, if any ever existed. The bill should also be dismissed for want of proper parties. The original consideration of the conveyance was a debt due Cock & Crowder, and all the parties interested are not made parties in this suit. It does not appear what particular share belonged to Cock or Crowder. At all events, if the defendants are liable in this action, the representatives of Cock should have been made parties.

*J. A. Spencer*, for the respondent. The heirs at law of John H. Brown stand in the situation of the ancestor, and are now subject to the same remedies the ancestor would have been had he survived. Brown the father and Browns the sons held the legal estate; Cock & Crowder held only an equitable interest. The trustee is liable to account to his cestuis que trust, though an alien, as he would be to a citizen. The same remedies exist in favor of aliens as of citizens in respect to personal and equitable estates. There can be no escheat in this case, because the trustee is capable of holding and transmitting the fee. The cestui que trust of this resulting trust had no legal but only an equitable interest, and is not within the statute of uses and trusts. The original fund was partnership property. The land purchased with this fund was conveyed to Brown without the authority or knowledge of Cock & Crowder. They were never tenants in common of the land, but were joint tenants of the fund and of the equity. Any appropriation of the fund by Brown without their knowledge cannot change the rights of Cock & Crowder in equity. The conversion of the land into money and choses in action by the defendants imparts or continues to it the same character of the original fund, and therefore survives to Crowder. This court has power to continue the fund as money, it began and ended as such. It would be strange doctrine indeed to allow the agent of an *alien*, without authority, to invest the money of his principal in land conveyed to himself, and thus discharge

himself from accountability because of such alienage. The statute of limitations is no bar, because six years had not run after the money was received before the bill was filed ; because it is a trust affording no remedy at law, therefore the legal bar has no application ; because the statute is neither plead nor insisted upon in the answer, and therefore not available to the defendant if it existed,

THE CHANCELLOR. The proofs in the case conclusively establish the fact that Brown and his partner were employed to collect the partnership debt due to Cock & Crowder, and that a conveyance of these four lots was taken for their benefit, by Brown and his then partner, in part payment of that debt. It is also evident from the letter of February 1804, that the conveyance was taken in the name of Brown without any previous instructions or authority for that purpose from Cock & Crowder. It was not, therefore, strictly speaking, a resulting trust, which would in equity result to the state and not to the aliens, according to the decision of this court in *Leggett* v. *Dubois*, (5 *Paige's Rep.* 114.) The act being unauthorized, this court would not suffer the agent to keep the property under such circumstances, or permit it to be forfeited by raising a resulting trust in equity in favor of the state. The proper course in such a case, as the aliens could not take and hold the land itself as real estate, would be to decree a sale thereof, and compel the agent who held the legal estate to execute a conveyance to the purchaser ; and thus give to the beneficial owners the proceeds of such sale as personal estate. This case, however, does not depend upon the operation of a resulting trust, or even upon the equitable power of this court to convert an agent, who has exceeded his authority, into a trustee by implication. There can be no resulting trust where there is an axpress trust declared and evidenced by the written declaration of the trustee, And the several letters of Brown & Burnett, and of Brown alone, subsequent to the date of the deed from Johnson, when taken together contain a perfect declaration on the part of Brown that he held the legal title in trust to sell the lands and convert them into

personalty, as soon as practicable, for the use of the firm of Cock & Crowder. Upon the principle of equitable conversion, therefore, these lands must in equity be considered as personal property belonging to the partnership, the proceeds of which, when sold, could be taken and held by the surviving partner, although he was an alien. A devise or conveyance of lands to a citizen in trust to sell the same as soon as practicable and pay over the proceeds of the sale to an alien is not invalid, as the principle of public policy which prohibits an alien from holding lands here without the consent of the state does not apply to such a case. (*Craig* v. *Leslie*, 3 *Wheat. Rep.* 563.) Whether the rule of law on this subject has been changed in this state, as to future *devises*, by the provision of the revised statutes declaring the devise of *any interest* in real property to an alien void, is a question not necessary to be now considered, as it has no application to this case. This trust was not created by devise and it had descended upon the heirs of Brown, and had been executed by a sale of the land, before the revised statutes went into operation. This case, as respects the proceeds of the land belonging to the aliens, differs from that of *Leggett* v. *Dubois*, as there was no intention of the parties in this case to retain the property as real estate in evasion of the law, but merely to secure the debt and to convert the land into money. In the case referred to, the object was that the trustee should take and hold the real estate permanently for the benefit of Sellon the alien, the power to sell and pay off incumbrances being only to be exercised in case he did not pay them out of the rents, &c. The vice chancellor was clearly right in the conclusion at which he arrived in the present case, that the heirs of Brown took the legal estate in the four Holland patent lots, charged with the trust to sell the land for the benefit of the firm of Cock & Crowder. Having executed that part of the trust, although without any knowledge of its existence, they held the proceeds of the sale for the benefit of the surviving partner, as personal property belonging to the firm, at the time of filing of this bill; and it now belongs to the complainant as his

personal representative, to be disposed of by him according to equity in closing up the partnership concerns.

The defendants have no valid defence on account of lapse of time. There being an express trust to sell the lands and pay over the proceeds, there was no act of limitation which was applicable to the case before the sales were actually made. The bill was filed within twenty years after the last letter of Brown admitting the trust, and within six years after the first sale in 1823. And the heirs having resisted the claim in opposition to the written evidence of their father's letters, showing the trust beyond all possibility of doubt, and having endeavored to defeat the complainant upon a mere technical objection on the ground of alienage, contrary to the obvious justice of the case, I think the vice chancellor was right in not allowing them costs.

The decree appealed from is therefore affirmed with costs. The master must, in taking the account, allow to the complainant interest from the date of the appeal, upon the balance in the hands of the appellants, as damages awarded to him by this court for the injury and delay caused by the appeal.