LEWIS v. HAWKINS ET AL.

1. Where a party agrees to sell land to another and as consideration therefor the vendee gives his promissory notes payable at a future date named, and the vendor gives his bond conditioned that on the payment of the notes he will convey the premises in fee to the vendee, but makes no deed, the legal estate remains, until the payment of the purchase-money, in the vendor, and he has, by the law of those States where such liens are recognized, a "vendor's lien." The vendee has an equitable title only; one indeed which he can sell or devise, but one which if the purchase-money is unpaid he cannot sell so as to exclude the vendor's right to have payment of it. Any purchaser from the vendee who assumes to pay the notes takes the same title that the vendee had, that is to say an equitable title, the land being still charged with the payment of the purchase-money.

2. A discharge of such purchaser from the vendee under the Bankrupt Act, will relieve such purchaser from paying the notes, but it will not give

---

* 1 Redfield on Railways, 5th edition, p. 271.

him a legal title in fee to the lands. That title, subject to the equity of the vendee, or of the purchaser from him, remains in the vendor.

3. A statute of limitations barring suits for the recovery of real estate after a certain lapse of time does not apply to a case like that above described. The vendee, or the purchaser from him, stands in the relation of a trustee to the vendor for the unpaid purchase-money (or, as the matter is looked upon in some States, stands in that of a mortgagee) against whom the statute does not run.

4. If the notes are not paid, the vendor may apply by bill in equity against the vendee and the purchaser from him, tendering a good deed, and ask that they pay the purchase-money at short date or be foreclosed from setting up any right to the land, and that it be sold and the proceeds applied to paying the purchase-money.

5. Where confessedly the title of a party claiming land as owner, and who has agreed to sell, is denied by the vendee and a dispute has taken place about title, so that a tender of a deed would be a useless ceremony, costs on a bill filed to enforce the payment of the purchase-money must abide the result of the suit.

6. If the purchaser from the vendee be dead, leaving a widow his executrix, and heirs-at-law to whom with her his real estate has descended, they ought to be made parties defendant to any bill to foreclose.

APPEAL from the Circuit Court for the Western District of Arkansas.

The case was thus:

A statute of limitation in Arkansas, passed January 4th, 1851,* enacts that no suit at law or in equity for the recovery of real estate shall be brought after the lapse of seven years from the time when the cause of action accrued.

This statute being in force, Lewis, in November, 1853, agreed to sell to Hawkins certain real estate; Hawkins, for the consideration-money giving to Lewis his two promissory notes, each for the sum of $500, payable, one on the 1st of February, 1855, and the other on the 1st of February, 1856, and Lewis at the same time giving to Hawkins his bond in the penal sum of $2000, binding him, Lewis, upon the payment of the two notes to Hawkins, to convey in fee simple the premises so sold.

It did not appear that this bond authorized Hawkins to take possession of the property sold, or that he did so.

---

* Gould's Digest, chapter 106, § 2.

In October, 1855, Hawkins sold and conveyed the land to one Hamiter; Hamiter, as a part of the consideration, assuming the payment of the notes which Hawkins had given to Lewis. Hamiter went into possession of the premises, and occupied them, with his family, until May, 1866, when he died, leaving a widow and nine children his heirs-at-law, and whom, with the widow, he made his devisees; the widow being made his executrix. The widow and her family had occupied the premises ever since Hamiter's, the husband's, death.

Nothing having been paid by any one upon the two notes, Lewis sued Hawkins, and on the 11th of August, 1860, recovered a judgment against him for $1201. The judgment remaining also wholly unpaid, Lewis filed, in August, 1871, a bill against Hawkins and the widow and executrix of Hamiter (his children and heirs-at-law not, however, being made parties), to enforce the payment of the notes and interest against the land.

The bill alleged that the complainant had always been and still was willing to perform the agreement on his part, and offered to execute and bring into court, to be delivered to the defendants, or either of them lawfully entitled thereto, a deed conveying the land in fee simple in accordance with the condition of the title-bond, on being paid the purchase-money due, with the interest. And alleged further that the complainant, since the second note fell due, had duly tendered to Hawkins a deed of conveyance, and demanded the payment of the amount due for the purchase-money thereof; but that Hawkins refused to accept the deed and to pay the purchase-money.

The prayer of the bill was that the equity of redemption of the defendants, and of all persons claiming through them or either of them, might be barred and foreclosed, and that the defendants be compelled to pay to the complainant the amount due to him for the land with interest; the complainant being ready and willing to execute and deliver to the defendant Hawkins, or his assigns, a deed for the land in fee simple with warranty of title; and that in case the

said defendants would not pay the said purchase-money by a short day to be named, the premises might be sold and the proceeds applied to the payment of the decree to be rendered for the purchase-money.

Both defendants answered.

The answer of Hawkins denied that any tender of a deed as alleged in the bill had been made to him, and he set up as a defence his discharge in bankruptcy.

Mrs. Hamiter, the widow, relied upon the already-mentioned statute of limitations of Arkansas, which bars suits at law and in equity for real estate after the lapse of seven years from the time the cause of action accrued.

The depositions of both Lewis and Hawkins were taken. The former stated that the tender alleged in the bill had been made; the latter that no such tender had ever been made.

The court below dismissed the bill for want of equity, and from that, its decree, Lewis, the complainant, brought the case here.

*Mr. A. H. Garland, for the appellant:*

There is nothing in the record showing upon what grounds the bill was dismissed.

If the court based its decision upon the question of tender of a deed, it was error.

If upon the statute of limitations, it was error equally.

There are no other points upon which it is possible to have founded the decree.

By the terms of the contract, as evidenced by the title-bond, the purchase-money was to have been paid before a deed was made. The notes were due and payable at a specified time, and if not paid then there was a default, and Lewis had his right of action at once. Besides the tenor of the notes, the title-bond made payment a condition precedent, and no tender of a deed was necessary at all.*

If, however, it were necessary to tender a deed, a failure

---

* 2 Parsons on Contracts, 41, ed. 1853; Ib. 187–189.

to do so would be no cause of dismissal, but only a reason for taxing Lewis for costs of suit, as he might possibly have avoided a suit by tendering the deed. But to avoid all this, we have the fact that Lewis could not know who claimed the land after Hawkins, nor to whom to make the deed. He avers, however, his readiness to make the deed to the person entitled to it under the order and decree of the court, and this was all he could do.* There can be nothing, then, in the question of tender.

When Hawkins purchased the land and took a title-bond from Lewis, the parties stood towards each other just as if Lewis had made a deed to Hawkins, and Hawkins had mortgaged back the land to secure the payment of the purchase-money.† And this proceeding is simply an attempt to foreclose a mortgage. It is a proceeding *in rem* to subject the land to the payment of money, of the non-payment of which Hawkins's vendee had due notice. This being true, the plea of the statute of limitations is of no effect. This defence is set up by analogy to the statute bar to the remedy at law; but it is well settled that the statute of limitations which would bar a debt secured by mortgage will not bar the remedy upon the mortgage, because the mortgage has a legal import more extensive than the mere evidence of the debt.‡

Even if the *judgment* on these notes had been barred, yet Lewis could recur to his mortgage and ask for its enforcement.§

Indeed, it is not seen how Hawkins and his vendee, holding by consent of Lewis, and necessarily with full knowledge of the non-payment of the purchase-money, could plead limitations at all, whether in an action to recover the land or to make it pay the debt.

---

* Turner *v.* Lassiter, 27 Arkansas, 662; 1 Leading Cases in Equity, Hare & Wallace's notes, 270 *et seq.*

† Smith *v.* Robinson, 13 Arkansas, 534; Moore *v.* Anders, 14 Id. 633; Harris *v.* King, 16 Id. 126.

‡ Trotter *v.* Erwin, 27 Mississippi, 772; Bush *v.* Cooper, 26 Id. 599; Thayer *v.* Mann, 19 Pickering, 535.

§ Bank *v.* Guttschlick, 14 Peters, 19.

*Messrs. Pike and Johnson, contra, for the widow:*

1st. The bond for title did not convey to Hawkins any *legal* interest in the land, but at most an equity, with right of possession.

2d. On failure of Hawkins to pay the notes the bond was forfeited, and Lewis had a right to retake the possession.

3d. The estate in fee being in Lewis, how can he have a lien? The man cannot have a lien on that which is his own?

4th. The first note fell due on the 1st of February, 1855. Upon that default Lewis was entitled to retake possession. This suit was instituted by him on the 31st of August, 1871, eleven years after he obtained judgment. The statute of limitations then barred any action by him, in law or equity, for possession. Having lost the right to regain possession, he cannot avoid the statute bar by setting up a lien for the purchase-money, and asking to have a decree for money already in judgment, and *a sale of his own land* to satisfy such decree.

5th. Suppose such sale were decreed. How would the purchaser have legal title, when neither Hawkins nor Hamiter ever had any?

6th. Assume that Lewis had once, on the 1st of February, 1855, a right to sue on the notes, to bring ejectment or to foreclose, or to do all at once, yet the limitation prescribed by the act of January 4th, 1851, applied to the case and barred an ejectment or suit to foreclose at the end of seven years thereafter. Under the statute the right to foreclose was barred long before this suit was brought.

7th. It so appears on the face of the bill, and there is no averment of any fact to prevent the bar applying. The defendants could have availed themselves of the statutory bar by demurrer.

8th. The bill, therefore, did not make a case in which the plaintiff was entitled to relief or discovery, and therefore it was properly dismissed for want of equity, *i. e.*, for want of right to equitable relief.

Mr. Justice SWAYNE delivered the opinion of the court.

Upon the execution of the notes and the title-bond between Lewis and Hawkins, Lewis held the legal title as trustee for Hawkins; and Hawkins was a trustee for Lewis as to the purchase-money. Hawkins was *cestui que trust* as to the former and Lewis as to the latter.* The seller under such circumstances has a vendor's lien, which is certainly not impaired by withholding the conveyance. The equitable estate of the vendee is alienable, descendible, and devisable in like manner as real estate held by a legal title. The securities for the purchase-money are personalty, and in the event of the death of the vendor, go to his personal representative.† It does not appear that the title-bond authorized Hawkins to take possession, or that he did so. If there were no such authority, and he entered into possession, he held as a licensee or tenant at will.‡ The vendee cannot in such cases dispute the title of his vendor any more than the lessee can dispute that of his lessor.§ Any other person coming into possession under the vendee, either with his consent or as an intruder, is bound by a like estoppel.‖ Hamiter, having bought and assumed the payment of the purchase-money stipulated to be paid by Hawkins, took the property subject to the same liabilities, legal and equitable, to which it was subject in the hands of Hawkins.¶

The discharge in bankruptcy released Hawkins from personal liability for his debt, but the statute of limitations cannot avail to protect the land from the vendor's lien upon it,

---

* 1 Story's Equity, § 789; 2 Id. § 1212; 1 Sugden on Vendors and Purchasers, 175; Swartwout v. Burr, 1 Barbour, 499; Champion v. Brown, 6 Johnson's Chancery, 402.

† 2 Story's Equity, § 1212.

‡ Suffern v. Townsend, 9 Johnson, 35; Dolittle v. Eddy, 7 Barbour, 75.

§ Whiteside v. Jackson, 1 Wendell, 422; Hamilton v. Taylor, 1 Littell's Select Cases, 444.

‖ Jackson v. Walker, 7 Cowan, 637.

¶ 1 Story's Equity, § 789; 1 Sugden on Vendors and Purchasers (Perkins's ed.), 175; Champion v. Brown, 6 Johnson's Chancery, 402; Muldrow's Executors v. Muldrow's Heirs, 2 Dana, 387; 2 Harris & Johnson, 64; Shipman v. Cook, 1 Green's Chancery, 254.

for the purchase-money which Hawkins agreed to pay, and which Hamiter, when he bought the land, assumed and agreed to pay for him.

We have already shown that as between Lewis and Hawkins there was a trust which embraced the purchase-money and fastened itself upon the land. The debt did not affect his assignee personally, but as we have shown also it continued to bind the land in all respects as if the transfer had not been made. The trust was an express one. Its terms and purposes were evinced by the title-bond, and the promissory notes to which that instrument referred. "As between trustee and *cestui que trust*, in the case of an express trust, the statute of limitation has no application, and no length of time is a bar. Accounts have been decreed against trustees extending over periods of thirty, forty, and even fifty years. The relations and privity between trustee and *cestui que trust* are such that the possession of one is the possession of the other, and there can be no adverse possession during the continuance of the relation. . . . A *cestui que trust* cannot set up the statute against his *co-cestui que trust*, nor against his trustee. These rules apply in all cases of express trusts."*

"As between trustees and *cestui que trust*, an express trust, constituted by the act of the parties themselves, will not be barred by any length of time, for in such cases there is no adverse possession, the possession of the trustee being the possession of the *cestui que trust*."†

The same principle applies where the *cestui que trust* is in possession. He is regarded as a tenant at will to the trustee. "Therefore, until this tenancy is determined there can be no adverse possession between the parties."‡ The relation once established is presumed to continue, unless a distinct denial, or acts, or a possession inconsistent with it are clearly shown.§

---

* Perry on Trusts, § 863.    † Hill on Trustees, 264*.    ‡ Id. 266*.

§ Whiting v. Whiting, 4 Gray, 236, Creigh's Heirs v. Henson, 10 Grattan, 231; Spickerneln v. Hotham, Kay, 669; Garard v. Tuck, 65 English Common Law, 249; Same Case, 8 Manning, Granger & Scott, 231; Decouche v. Savetier, 3 Johnson's Chancery Reports, 190; Anstice v. Brown, 6 Paige, 448; Kane v. Bloodgood, 7 Johnson's Chancery, 90.

In many of the cases it is held that the lien of the vendor under the circumstances of this case is substantially a mortgage.\* It is well settled that the possession of the mortgagor is not adverse to that of the mortgagee. In the case last cited it is said that to apply the statute of limitations "would be like making the lapse of time the origin of title in the tenant against his landlord." That the remedy upon the bond, note, or simple contract for the purchase-money is barred in cases like this, in no wise affects the right to proceed in equity against the land. As in respect to mortgages, the lien will be presumed to have been satisfied after the lapse of twenty years from the maturity of the debt, but in both cases laches may be explained and the presumption repelled.† The principles upon which this opinion proceeds are distinctly recognized in *Harris* v. *King*.‡ That case alone would be decisive of the case before us. The considerations which apply where the vendor in such cases resorts to an action of ejectment were examined by this court in *Burnett* v. *Caldwell*.§

The bill avers the tender of a deed by the complainant to Hawkins before the bill was filed. The answer of Hawkins denies the allegation. The testimony of Lewis sustains the bill; that of Hawkins the answer. The averment is not established. Except as to the costs the point is of no significance. If the tender of a deed had been properly made, and there had been no unjustifiable resistance to the taking of the decree by the complainant, to which he is entitled, he would have been required to pay all the costs. There being a contest, and it appearing that a tender would have been without effect, the costs must abide the result of the litigation.||

There is manifest error in the decree, but the bill is defective in not making the heirs-at-law of Hamiter parties,

---

\* Lingan *v.* Henderson, 1 Bland's Chancery, 236; Moreton *v.* Harrison, Id. 491; Relfe *v.* Relfe, 34 Alabama, 504.

† Moreton *v.* Harrison, *supra.* ‡ 16 Arkansas, 122. § 9 Wallace, 290.

|| Keisselbrack *v.* Livingston, 4 Johnson's Chancery, 144; Hanson *v.* Lake, 2 Younge & Collier, 328.

unless there is some statutory provision of the State of Arkansas which obviates this objection.

If necessary the bill can be amended in the court below.

DECREE REVERSED, and the cause REMANDED with directions to proceed

IN CONFORMITY WITH THIS OPINION.