Smith, J.
This action is one brought by the plaintiff on August 31st, 1889, against the auditor and treasurer of Hamilton county, to enjoin such auditor from adding large sums to the valuation of the personal property of the plaintiff as returned by him for taxation for the years 1883-4-5-6-7 and 8, and from certifying the same, and the tax thereon amountingto $5963.30, to the treasurer, to be placed by him for collection on the duplicate of 1888, and also to enjoin the treasurer from collecting the same — it appearing that the same had been so certified in 1888, before the bringing of this action. The petition alleges that the plaintiff made a true return of all his personal property for taxation in each of those years, and that the action of the auditor was therefore unwarranted by law.
The answer of defendant admits that the auditor had certified such additional amounts to the treasurer to be placed on the duplicate of 1888, and that it was proposed to collect the tax thereon. It further alleges that the plaintiff had failed to make proper returns of the amount of his personal property for each of the years named, and that the auditor had discovered this, and had properly and in pursuance of law, added to the valuation of the personal property of the plaintiff, as *546 returned by him for such years, the amounts in addition thereto which he ought to have returned therefor, as set out in the petition. These facts are denied by the reply.
The real questions in the case are these : Were the sums due to the plaintiff, (at the several times such returns were made by him for those years), on a contract bétween him and John and Maria A. Kauffman, credits, which should have been returned by him for taxation at their value ? If so, it is agreed that the amounts so added by the auditor, are the correct amounts. But the plaintiff further claims that, even if this be so, the auditor could not legally go back and correct the duplicate for the five years before 1888, as he has done.
The facts in brief, as proved or admitted, are these: On April 17,' 1877, John Kauffman, Maria, his wife, and the plaintiff were equal partners in the firm, and the owners of all the business and property of the partnership of John Kauffman & Co. It was carrying on a very extensive brewery in this city, and was the owner of a large amount of personal and real property valued over and above its debts, at about $500,000. The comparative value of the real estate and of the personal property is not certainly shown, but it was probably about the same. Rheinboldt was sick and anxious to sell his interest and retire from the business, and on that day the three parties entered into a written agreement, a copy of which is as follows :
“ Whereas, John Kauffman, Rudolph Rheinboldt and Maria A. Kauffman are jointly interested in the property used in the business of John Kauffman & Co.
“ And, whereas, the said Rudolph Rheinboldt is desirous of disposing of his interest in said business, and of retiring from said firm.
“ Now, therefore, this agreement made and entered into this seventeenth day of April, A. D. 1877, between John Kauffman and Maria A. Kauffman, parties of the first part, and Rudolph Rheinboldt, party of the second part, witnesseth:
“ 1st. That the said Rudolph Rheinboldt, in consideration *547 of the sum of One Hundred and Forty-five Thousand ($145,-000.00) Dollars, which the parties of the first part agree to pay as follows, to-wit:
“ (1) Ten Thousand Dollars cash;
“ (2) Ten Thousand Dollars on the first day of August,. 1878;
“(3) Ten Thousand Dollars on the first day of August of each and every year thereafter until said sum is fully paid; —
promises and agrees to convey and to execute all proper deeds therefor when said sum of $145,000.00, with interest thereon, as hereinafter, stipulated, has been paid in full, all his right, title and interest in all the property, both personal and real, now belonging to, or connected with said business, to the parties of the first part or either of whom as may by the parties of the first part be designated. And it is agreed that all deferred payments shall bear interest at six per cent, per annum, until paid, which interest shall be payable annually, the first paymentthereofto be on August 1,1878, the deferred payments to bear interest from date of this agreement, and that the said parties of the first part are to pay all taxes and assessments on all of said property.
“ 4th. The said John Kauffman hereby agrees and assumes to pay all debts and liabilities of the firm of John Kauffman & Co., and to save the said Rudolph Rheinboldt harmless from the same.
“ 5th. It is hereby understood between the parties hereto that said Rudolph Rheinboldt does not part with any interest in the real estate of said partnership property until the aforesaid amount of one hundred and forty-five thousand dollars with interest is paid in full and deed executed for said property ; it is also understood that said Rudolph Rheinboldt is not entitled to any revenue for said property whatsoever, either as rent or otherwise, during the continuance of this contract, except the principal and interest above provided for.
“6th. It is hereby agreed that said Rudolph Rheinholdt consents to join in a sale of real estate belonging to John Kauffman & Co., not necessary for carrying on the brewery business, if said John Kauffman desires to sell the same, he said Rudolph Rheinboldt being entitled to receive one-half of the proceeds of sale which shall be a credit upon said gross sum.
*548 “ 7 tip.. ■ -It .is further agreed [that the said Rudolph Rheinboldt will receive any sums of money before the same becomes due as above stipulated, and interest theron shall then cease from that date; all moneys paid .said Rheinboldt shall be a charge upon the interest of said Rheinboldt in said business.
. “ 8th. The said Maria A Kauffman hereby charges all her separate estate with the payment of said sum of $145,000.00 and with the faithful performance of this agreement and the .payment of all sums herein agreed to be paid.
“In witness whereof, the parties have hereunto set their hands and seals, in duplicate, on the day and year, aforesaid.
Witnesses John Kauffman,
A. E. Cramer, Rudolph Rheinboldt, SEAL."
Emile Schmitt, Mary A. Kauffman, SEAL.":
Thereupon, on the execution of this agreement, the cash payment of $10,000 was made, and the whole of the property, real and personal, taken possession of by the Kauffmans, who proceeded to occupy and use the real estate as if they owned it, and to use the personal property as their own, selling and disposing of it as they saw proper, with the full knowledge and consent of the plaintiff. Payments were made on the purchase money in substantial accordance with the provisions of the contract, and in the spring of 1883, when returns for taxation were to be made, there was a balance of purchase money remaining of $85,000; in 1884 a balance of $75,000; and in 1885, 1886, 1887 and 1888, a balance of $65,000.
‘ The first question, for consideration then, is this : On this state of fact, was the whole or any part of these amounts due or unpaid to plaintiff on this contract, subject to taxation ? In other words, was it “ personal property,” or did it constitute a “credit” under the provisions of sec. 2731 Rev. Stat., which makes such property or rights taxable ? For such section provides that “ all property, whether real or personal,” * . * *, * “ and,all moneys, credits, investments,” * * * * “ shall be subject to taxation.” By section 2730 it is provided that the word “ credit ” as used in *549 this taxing statute, “shall be held,, to mean the excess of the sum of all legal claims or demands, whether for money or other valuable thing, or for labor or services, due, or to become due, to the person liable to pay taxes thereon,” * * * “ over and above the, .sum of legal bona fide debts owing by such persons.” And the term “ personal property,” as provided by the same section, shall be held to iuclude and mean,, among other things, “third, the money loaned on pledge or mortgage of said real estate, although a deed or other instrument may have been given for the same, it between the parties the same is considered as security money.”
We are of the opinion‘that the contract between these parties made a credit in favor of the plaintiff, against the other parties thereto, for the amount that was collectible thereon. Of course, if the debtors were insolvent, and there was no security therefor, it might be of no value — but no question of that kind arises in this case, for it is conceded, as wé understand, that the parties who agreed to pay, are amply able to do so, and in effect the plaintiff also holds the title to all of the real estate contracted for, as a security for the payment of the purchase money.
It was held in the case of The Exchange Bank v. Hines, 3 Ohio St. 1, and practically approved in Cameron v. Capeller, 41 Ohio St. 534, that all choses in action must be listed by the owner thereof for taxation, and in the first of these two cases, .the court say (page 24), “in legal parlance, and in the sense in which the term is used in the constitution,’ credits are choses in action — things incorporeal, consisting in the right of one person to demand and recover from another a sum of money, or other thing in possession. The value of a credit, grows out of the right to have and receive property in possession, either by the sale and transfer of the claim to another person, in exchange for money or other things, or by requiring or enforcing payment from the debtor.”
Why, then’, is not the right of this plaintiff to recover this *550 money a chose in action, and therefore a credit? Clearly on each installment falling due he might have assigned his interest in the contract, and the right to recover the unpaid installments of purchase money to any other person, who then might recover the same — as said approvingly in the late case of Cincinnati v. Hafer, 48 Ohio St. — (27th Law Bulletin, 152), “ it was held in Grant v. Ludlow, 8 Ohio St. 1, that a, chose in action transmissible to an executor or admimistrator, under our law, is assignable in equity.” It may be, that in a case like this, the assignor should also place the legal title to the land contracted for, in the name of the assignee, that he might make conveyance of the property on full payment being made ; but this would only be an incident to the transfer.
But Judge Stone, in the decision of one of the cases cited by plaintiff, characterizes such a contract as this as a chose in action (Churchill v. Little, 23 Ohio St. 307). He says, “an executory contract for the purchase and sale of land, is not an instrument of that character.” — (viz., one that must be recorded). It is a legal instrument, and forms the basis of legal as well as equitable remedies; but it does not convey, or purport to convey, or legally to incumber or affect, any estate or interest in the land. The vendor sueing upon it may recover the price of the land contracted to be sold, and he, failing on his part to perform it, may be compelled at the suit of the purchaser to respond in damages for his default. It constitutes also in favor of the purchaser a claim to the title to the land, which in a proper case may be specifically enforced through the agency of a court of equity. This right to compel a specific performance of the contract constitutes the purchaser’s equity in the land, the vendor being in equity, as to the land, regarded as the trustee of the purchaser. But in either respect, whether regarded as a legal or equitable claim, the right of the purchaser rests in action, and the contract is therefore, essentially a chose in action.”
It is argued on behalf of the plaintiff, that where real estate is contracted to be sold by one person to another on deferred *551 payments, and the agreement between them expressly stipulates that no title thereto shall vest in the purchaser unless the purchase money has been fully paid, when the deed, therfor is to be executed, that the purchaser does not acquire any interest therein which is subject to levy or sale on execution (23 Ohio St. 1), and that as any title or right thereto is conditional, and may never become absolute, and the title remains in the vendor, and the land is taxed, that it would be unjust also to tax him upon the obligation given by the person to whom he had contracted to sell it. This may all be so, but if it is, it is not in our view decisive of the question under discussion. ■ The matter to be determined is, what has the legislature provided as to the taxation of such demands ? Has it declared them to be a credit, and taxable as such ? If it has, it would seem to be an end to the matter. But in this particular case there is no such double tax upon the plaintiff, for by the terms of the contract, the purchasers expressly agreed and bound themselves to pay all the taxes on all the property contracted for by them, and have done so. This was properly a subject of arrangement between the parties, and it seems entirely reasonable that they should provide that the purchaser should pay the taxes, as he has not only the use and possession thereof, but an equitable right in the property after making payment thereon. It would seem, too, that the Kauffmans, being absolutely liable for the payment of the purchase money, when making a return of their personal property for taxation, would, under the law, be entitled to deduct such liability from any claims or choses in action due them, and it may have been so done. But if the contention of the plaintiff in this case be correct, he has, during these eight years, been the owner of -a good and valid claim against the Kauffmans, rabging from $65,000.00 to $85,000.00, on which he has not, and is not liable to pay one dollar of taxes. We think this can not be so.
It is expressly provided by sec. 2730, Rev. Stat., that if money is loaned on a pledge or mortgage of real estate, al *552 though a deed or other intrument may have been given for the same, if between the parties the same is considered as a security merely, the debt thus secured is taxable as personal property. Now, if one convey to another a tract of land, as security for a debt, of course, the land is taxable, and the owner is bound for its payment. But in such case the debt thus secured must also be taken into account in the return for taxation of the personal property of the owner of the land, and this would seem to be as much of a double taxation, as in the case before the court. But if it be so, the right of the legislature to so provide has never been questioned to our knowledge, and under our revenue system, which seeks to impose the burdens of taxation, not only on tangible property, but on the credits and investments of the citizen, as those terms are used in the constitution and the statute, and prevent the success of all schemes by which this obvious purpose of the law is sought to be evaded or defeated, taxes, both on the land and the debt must be paid, though the title be in the same person. In a case like the one before us, if this claim of the plaintiff against the Kauffmans could not be held to come within the term “credits” as defined in the statutes, and by the decision of the courts, (as we think it can), there would be strong reason to hold under the authorities cited, that whei’e the vendor of land by title bond, retains the title in himself, as security for the purchase money stipulated thereby to be paid to him therefor, in effect he has an equitable mortgage thereon to secure such a payment, and this would bring it under the other provision of sec. 2730, before quoted. See 75 Alabama, 109; Jones on Mortgages, secs. 217-18-26; 96 Pa. St. 99; 7 Col. 396; 5 Wis. 598; 23 Wallace, 119.
But there is another feature of this case which should be considered. This contract was not simply one by the Kaufmans to purchase and'pay for the interest of the plaintiff in the real estate. It embraced also a very large personal estate —the malt, beer, horses and wagons, choses in action, and all *553 other property of this character. This was all turned over to' the purchasers, and, as we understand the contract itself, and as construed and acted upon by the parties themselves, no title or interest therein was reserved to the plaintiff, but the whole thereof became the property of the purchasers absolutely. Suppose that nine-tenths in value of the whole property contracted for has been personality — would the whole amount of the purchase-money contracted to be paid to plaintiff be free from taxation in his hands, for the reason that the vendor retained the legal title to the land, as a security for the payment of the whole consideration money ? In our opinion it would not.
But as we think that the whole amount contracted to be paid, must be considered as a credit, we find that the action of the auditor, in adding to the duplicate of 1888 the amounts thereof which the plaintiff' failed to return' for taxation, was right and proper, if the law conferred such power upon him.
That such power was conferred upon him by sec. 2781, Rev. Stat., and that he was authorized thereby to place upon the duplicate of 1888, the amounts improperly omitted by plaintiff from his tax returns for the five years before 1888., when the action of the auditor was taken, is conclusively settled by the decision of the Supreme Court in the case of Gager, Treas. v. Prout, 25 Law Bulletin, 197. The petition of plaintiff will be dismissed.
The question of the comparative value of the real estate and of the personal property contracted for, was not. gone into fully upon the trial. If the opinion of the court that the whole amount due on the contract was taxable, be correct, this other question would not seem to be material. But if counsel for plaintiff desires to have the Supreme Court review the decision, it may be well to have a finding as to this comparative value, and of the indebtedness of the firm, at the date' of the transfer. We think counsel can agree as to this, but if not, we will aid them.
Von Seggern, Phares & Dewald, for plaintiff.
Foraker, Black & Bosworth, for defendants.
Judge Swing is of the opinion that the obligation held by Rheinbold against the Kaufmans, was not taxable so far as the real estate was concerned.