Louis and Florence NEMKOV,
Plaintiffs-Appellants,

v.

O'HARE CHICAGO CORPORATION, La-Salle National Bank, John C. Theodosakis, Zack T. Ritsos, Anthony C. Karlos, Harold Chukerman, Michelle Tomera and Milton K. Joseph, Defendants-Appellees.

No. 78–1333.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1978.

Decided Jan. 24, 1979.

Robert A. Handelsman, Chicago, Ill., for plaintiffs-appellants.

Milton K. Joseph, Rosemont, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and TONE and WOOD, Circuit Judges.

TONE, Circuit Judge.

Plaintiffs, participants in a shareholder's voting trust, seek to have the trust agreement rescinded and their stock returned on the ground that, in soliciting their participation, the promoters of the trust failed to state a material fact in violation of the federal securities laws. The District Court dismissed the complaint on the ground that plaintiffs had failed to state a claim on which relief could be granted. We affirm.

Plaintiffs are shareholders of the O'Hare Chicago Corporation, which owns and operates the Ramada O'Hare Inn in Rosemont, Illinois. Sometime in 1969 defendant Anthony Karlos mailed letters to the shareholders of O'Hare Chicago, asking them to participate in the voting trust. Plaintiffs delivered their O'Hare Chicago stock to the defendant LaSalle National Bank, trustee

for the voting trust, on December 19, 1969. They allege that at no time prior to February 14, 1971 were they informed that participation in the voting trust required that they relinquish their voting rights in the corporation for 10 years. On that date they attended O'Hare Chicago's annual shareholders meeting and were informed that because of the voting trust agreement they could not vote for board of directors candidates at that meeting or vote on any other issues for 10 years. Nevertheless, plaintiffs did not file the complaint in this case until December 20, 1977, more than six years after they discovered the alleged material omission.

██ Plaintiffs rely on § 17(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Security and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5(b). The District Court held that all of plaintiffs' federal law claims were time barred.[1]

Relying upon *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974), the District Court found that because there was no federal statute of limitations for actions based on § 17(a)(2) of the Securities Act, § 10(b) of the Securities Exchange Act, or Rule 10b–5, Illinois' three year statute of limitations for similar actions was applicable.[2]

---

1. Plaintiffs asserted certain state law claims that also were dismissed. Since the federal law claims had been disposed of at the outset of the case, the court properly dismissed the pendent state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hupp v. Gray,* 500 F.2d 993, 997–998 (7th Cir. 1974). Those claims are now the subject of state court proceedings, *Lane v. O'Hare Chicago Corporation* (78–CH–203), and are not before us.

2. The District Court also held that the temporary exchange of stock for voting trust certificates did not constitute a "purchase or sale" within the meaning of § 10(b) or Rule 10b–5. It can be argued that § 17(a)(2) of the Securities Act of 1933 does not contain a "purchase or sale" requirement. The District Court did not address the § 17 claim at the first hearing. But at a second hearing on the defendants' "motion to dismiss" the amended complaint, the District Court held that the § 17 claim was

barred by the statute of limitations and, in the alternative, that plaintiffs had failed to allege "scienter," and therefore had failed to state a claim for relief.

At the first hearing the District Court granted plaintiffs leave to file an amended complaint; at the second hearing, however, in ruling on defendants' motion to dismiss the amended complaint the court denied leave to file an amended complaint. We treat the court's two rulings as simply granting defendants' motion to dismiss. Since we agree that any federal securities law claim that plaintiffs might have had is barred by the statute of limitations, we do not reach the issues of whether the transaction involved here constitutes a "purchase or sale" for purposes of § 10(b) and Rule 10b–5 or whether there is an implied cause of action under § 17, absent a viable claim based on § 10(b) and Rule 10b–5. *See Daniel v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 561

■ Distinctions between legal and equitable remedies are not often necessary in the federal courts, where law and equity are merged under the Federal Rules of Civil Procedure. For the purpose of determining whether laches or a statute of limitations is applicable to a claim based on a federal right, however, that distinction is controlling.[3] In the federal courts the statute of limitations yields to the doctrine of laches only in cases in which equitable jurisdiction is "exclusive" and not "concurrent." *See generally 2 Moore's Federal Practice* ¶ 3.07[3], 3–67 to 3–71, 3–74 to 3–76 (1978).

Appellants contend that, because they seek only equitable relief that would not be obtainable in an action at law, there is no "concurrent" remedy at law, and therefore the statute of limitations is inapplicable. The inquiry is not whether a plaintiff could obtain the same relief at law; rather, it is whether the statute relied on requires the plaintiff to seek relief only in equity. Compare *Cope v. Anderson,* 331 U.S. 461, 463–464, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947) with *Holmberg v. Armbrecht,* 327 U.S. 392, 395–396, 66 S.Ct. 582, 90 L.Ed. 743 (1946) and *Russell v. Todd,* 309 U.S. 280, 285–286, 60 S.Ct. 527, 84 L.Ed. 754 (1940).

In the *Russell* and *Holmberg* cases, the sole remedy was in equity, and therefore laches rather than the statute of limitations applied. Both were actions to enforce the liability of shareholders of insolvent joint stock banks under § 16 of the Federal Farm Loan Act, 12 U.S.C. § 812 (1940). Since the Farm Loan Act imposed liability on each shareholder for his "equal and ratable" share of the bank's debts in excess of its assets,

> the sole remedy is by plenary representative suit brought in equity in behalf of all creditors of the bank, in which the existence and extent of insolvency, and the ratable shares of the contribution by shareholders can be ascertained and an equitable distribution made of the funds

F.2d 1223, 1244–1246 (7th Cir. 1977), *rev'd on other grounds,* —— U.S. ——, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).

recovered. But this amount cannot be determined and its distribution effected without resort to the procedures traditionally employed by equity upon a bill for an accounting and for the distribution of a fund brought into its custody. No stockholder is liable for more than his proportion of the debts not exceeding the par value of his stock. His proportion can be ascertained only upon an accounting of the debts and of the stock and a pro rata distribution of the liability among the shareholders and of the proceeds of recovery among the creditors. *Russell v. Todd, supra,* at 285, 60 S.Ct. at 530. The Court distinguished actions based on the analogous provision in the National Bank Act, 12 U.S.C. § 63 (1940), on the ground that the Bank Act authorized the Comptroller of the Currency to assess a specific amount against each shareholder of an insolvent national bank to satisfy the claims of its creditors. Each shareholder was, therefore, liable in a suit at law for the amount assessed.

Section 12 of the Farm Loan Act defined each shareholder's liability by reference to the total amount of the creditors' claims and the total number of shareholders. *See Christopher v. Brusselback,* 302 U.S. 500, 502–503, 58 S.Ct. 350, 82 L.Ed. 388 (1938). Since the amount of claims actually asserted might differ from the potential amount of creditors' claims, no shareholder was liable to any single creditor for any amount until the total amount was fixed. *See Brusselback v. Cago Corporation,* 85 F.2d 20, 22 (2d Cir.), *cert. denied,* 299 U.S. 586, 57 S.Ct. 111, 81 L.Ed. 432 (1936). All the creditors had to be brought together in a single lawsuit. *Id.* Traditionally, a class action could only be filed on the equity side of the court. *Id.* Therefore, the statute created a "federal right for which the sole remedy is in equity." *Holmberg v. Armbrecht, supra,* 327 U.S. at 395, 66 S.Ct. at 584; *see Todd v. Russell,* 104 F.2d 169, 172 (2d Cir. 1937), *aff'd,* 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940).

---

**3.** In diversity cases, the state time limitation is controlling. *Guaranty Trust Company v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

■ If, however, the sole remedy is not in equity and an action at law can be brought on the same facts, the remedies are concurrent for purposes of the rule under consideration even though more effective relief would be available in equity. In *Cope v. Anderson, supra,* two plaintiffs attempted to recover from the shareholders of two different national banks under § 63 of the National Bank Act. The banks' creditors filed class actions against all the shareholders of the two banks. The applicable statutes of limitations had expired by the time both suits were filed, but plaintiffs argued that since the suits had been filed in equity, the doctrine of laches, and not any statutes of limitations, was applicable. Justice Black, writing for the Court, rejected the argument:

> Even though these suits are in equity, the states' statutes of limitations apply. For it is the scope of the relief sought and the multitude of parties sued which gives equity concurrent jurisdiction to enforce the legal obligation here asserted. And equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy.

*Id.* 331 U.S. at 463–464, 67 S.Ct. at 1341. It is apparent that individual actions against each shareholder by each creditor would have been impractical as well as costly. Nevertheless, since the plaintiffs could have sought relief at law, the statute of limitations applied.

■ Equitable jurisdiction is concurrent even though plaintiff chooses to forego damages and to seek only equitable relief. *Madison v. Wood,* 410 F.2d 564, 567–568 (6th Cir. 1969); *Swan v. Board of Higher Education of the City of New York,* 319 F.2d 56, 59–60 n.5 (2d Cir. 1963); *see also Williams v. Walsh,* 558 F.2d 667, 671 (2d Cir. 1977). Therefore, if an action at law for damages would be barred, so too is the action in equity.

■ In the case at bar, if the facts alleged established a violation of § 10(b) of the Securities Exchange Act and Rule 10b–5, plaintiffs could maintain an action for damages. *See Superintendent of Insurance v. Bankers Life & Casualty,* 404 U.S. 6, 13 n.9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Equitable jurisdiction is therefore "concurrent" and not "exclusive." Illinois' three year statute of limitations is applicable to claims for damages under § 10(b) and Rule 10b–5. *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974); *Parrent v. Midwest Rug Mills,* 455 F.2d 123, 125–127 (7th Cir. 1972). Plaintiffs' claim for equitable relief based on § 10(b) and Rule 10b–5 is barred since a claim at law for damages would be barred. *See Madison v. Wood, supra; Swan v. Board of Higher Education, supra.*

■ Plaintiffs' claim under § 17(a)(2) of the Securities Act of 1933 is in a similar posture. If a private right of action under that section exists even though the § 10(b) and Rule 10b–5 claim is barred,[4] equitable jurisdiction would be "concurrent." Illinois' three year statute of limitations is applicable to a claim for damages under § 17(a), *Parrent v. Midwest Rug, supra,* and therefore plaintiffs' claim for equitable relief based on that section is barred. *See Madison v. Wood, supra; Swan v. Board of Higher Education, supra.*

Furthermore, it should be noted that § 12 of the Securities Act of 1933, 15 U.S.C. § 77*l*,[5] creates a cause of action for dam-

---

**4.** This court has held that a private right of action for damages under § 17(a) can be maintained if a claim under § 10(b) and Rule 10b–5 is established. *See Daniel v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 561 F.2d 1223, 1244–1246 (7th Cir. 1977), *rev'd on other grounds,* —— U.S. ——, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1293 (7th Cir. 1975). If the § 17(a) claim is dependent on the existence of a § 10(b) and Rule 10b–5 claim and the latter is barred by the statute of limitations, the § 17(a) claim would also seem to be barred.

**5.** Section 12 provides that,

> Any person who . . . offers or sells a security . . . by the use of . . . the mails, by means of a prospectus . . . which . . . omits to state a material fact necessary in order to make the statements . . . not misleading . . .

ages in language virtually identical to that in § 17(a)(2). Plaintiffs do not rely on § 12 because the statute of limitations for any such action expired more than five years before the complaint in this case was filed. See 15 U.S.C. § 77m. Nevertheless, the existence of § 12 makes it difficult to say that appellants' "sole remedy" is in equity.

■■■ Plaintiffs, presumably, referring to the LaSalle National Bank's status as trustee of the voting trust, also rely on cases holding that statutes of limitations do not begin to run on claims for misappropriation or mishandling of trust assets until the trust terminates. *Lewis v. Hawkins,* 90 U.S. (23 Wall.) 119, 23 L.Ed. 113 (1875); *Woodruff v. City of Chicago,* 394 Ill. 542, 551, 69 N.E.2d 287 (1946); *Manufacturers Trust v. Kelby,* 125 F.2d 650, 654 (2d Cir. 1942). The result [6] in the first case and the holdings in the others follow from the principle that a trustee's duty to account for trust property continues so long as the trust continues. They have no application here, where the claim is based upon alleged omissions in statements which were made by persons other than the trustee and which have nothing to do with the trustee's duty to account.[7]

Accordingly, the judgment of the District Court, dismissing the complaint, is affirmed.

AFFIRMED.

shall be liable to the person purchasing such security from him, who may sue either at law or in equity . . . to recover the consideration paid for such security . . . or for damages if he no longer owns the security.

"Prospectus" is defined in § 2(10) to include "any prospectus, notice, circular, advertisement, letter, or communication, . . . which offers any security for sale . . .;" 15 U.S.C. § 77b(10).

Section 17(a)(2) provides that,

It shall be unlawful for any person in the offer or sale of any securities . . . by the use of the mails . . . to obtain money or property by means of . . . any omission to state a material fact necessary in order to make the statements made . . . not misleading . . . ..

6. In *Lewis v. Hawkins, supra,* the Court held that neither the trustee nor his vendee could acquire title to trust property by adverse possession since possession of the property by the trustee was deemed possession by the beneficiary.

7. Similarly, although some of the individual defendants are directors of O'Hare Chicago, with fiduciary duties to the shareholders of that corporation, those duties are not involved here, where the claim is based on alleged omissions in statements made to induce participation in a voting trust, and therefore plaintiffs' reliance on *Lewis v. Hawkins, supra,* is misplaced.